**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Timothy Nathan BROWN, Appellant.**

Superior Court of Pennsylvania.

Argued April 30, 1999.

Filed Oct. 19, 1999.

728

Royce L. Morris, Harrisburg, for appellant.

Francis Chardo, Asst. Dist. Atty., Harrisburg, for the Com, appellee.

Before McEWEN, President Judge, and CAVANAUGH, DEL SOLE, JOHNSON, HUDOCK, EAKIN, JOYCE, MUSMANNO and ORIE MELVIN, JJ.

JOYCE, J.:

¶ 1  This matter is before the Court on Timothy Brown's (Appellant) appeal from the judgment of sentence, as made final by the denial of post-sentencing motions.[1] For the reasons set forth below, we vacate the judgment of sentence and remand for resentencing.  Before reaching the merits of this appeal, we will recount the relevant facts and procedural history.

¶ 2  The charges in this case arise out of two incidents, one in which Appellant raped a seventy-four (74) year old woman and one in which he attempted to rape an officer posing as an elderly woman.  On August 4, 1997, following a colloquy with

---

1. *See Commonwealth v. Chamberlain,* 442 Pa.Super. 12, 658 A.2d 395, 397 (1995), *appeal quashed,* 543 Pa. 6, 669 A.2d 877 (1995) and Pa.R.Crim.P. 1410 and comment thereto (providing that a judgment of sentence becomes final for purposes of appeal when the trial court disposes of post-sentencing motions).

the trial judge, Appellant pled guilty to rape,[2] criminal attempt rape,[3] unlawful restraint[4] and burglary.[5] Prior to the entry of the plea, the Commonwealth notified Appellant of its intention to seek a mandatory sentence under 42 Pa.C.S.A. § 9714. On September 24, 1997, the trial court held a sentencing hearing. The trial judge found that Appellant had two predicate convictions under 42 Pa.C.S.A. § 9714.[6] The trial court further found Appellant to be a "sexually violent predator" under 42 Pa.C.S.A. § 9794, relating to the designation of sexually violent predators. After consideration of the presentence investigation report and the report of the State Board to Assess Sexually Violent Predators, the trial court concluded that a sentence of twenty-five (25) to fifty (50) years' incarceration would not be sufficient to protect the public safety. The trial judge then sentenced Appellant to two consecutive life sentences without parole, with all other sentences to run concurrent.[7] On October 6, 1997, Appellant timely filed post-sentencing motions, which included a motion to vacate and/or modify sentence. By order dated December 16, 1997, the trial court denied Appellant's post-sentencing motions.

¶ 3 On January 6, 1998, Appellant timely filed his notice of appeal. By order dated August 20, 1998, this Court remanded the matter and directed the trial court to place its reasons on the record for imposing two consecutive life sentences un-

der 42 Pa.C.S.A. § 9714(a)(2). On September 30, 1998, the trial court filed its "Reasons Relied Upon For Consecutive Life Sentences" (hereinafter Reasons) with this Court. Thereafter, on October 30, 1998, this Court ordered that this case be heard *en banc*. This Court further directed that a supplemental brief be submitted in accordance with Pa.R.A.P. 2140. Appellant filed a substitute brief and the Commonwealth responded.[8] This matter is now ripe for our consideration.

¶ 4 Appellant presents six issues for our review: (1) whether 42 Pa.C.S.A. § 9714 violates the *ex post facto* clause of the United States Constitution; (2) whether section 9714 is unconstitutionally vague; (3) whether the Commonwealth's burden of proving the existence of predicate offenses by a preponderance of the evidence when enforcing section 9714 violates the due process clause of the United States Constitution and Article 1, § 9 of the Pennsylvania Constitution; (4) whether section 9714 is unconstitutionally vague in failing to define the burden of proof necessary to determine what is "insufficient to protect public safety;" (5) whether the trial court abused its discretion in imposing two consecutive life sentences in excess of the twenty-five (25) to fifty (50) years contemplated by section 9714 when the court failed to place its reasons on the record; and (6) whether the provisions of the Registration of Sexual Offenders Act, 42 Pa.

**2.** 18 Pa.C.S.A. § 3121.

**3.** 18 Pa.C.S.A. § 901 (criminal attempt) and § 3121 (rape).

**4.** 18 Pa.C.S.A. § 2902.

**5.** 18 Pa.C.S.A. § 3502.

**6.** At the sentencing hearing, the Commonwealth introduced certified copies of official records proving Appellant's prior convictions. The documents showed that Appellant had two prior convictions for attempted rape, arising out of separate transactions.

**7.** Specifically, the trial judge sentenced Appellant to the following: life imprisonment without parole for rape; not less than two (2)

years nor more than five (5) years for unlawful restraint, to run concurrent; life without parole for criminal attempt rape, to run consecutive; and not less than five (5) years nor more than ten (10) years for burglary, to run concurrent.

**8.** Following issuance of the Supreme Court of Pennsylvania's decisions in *Commonwealth v. Williams*, 557 Pa. 285, 733 A.2d 593 (1999), and *Commonwealth v. Gaffney*, 557 Pa. 327, 733 A.2d 616 (1999), this Court ordered the parties to file supplemental briefs addressing the effect of these cases on the issues presented in this appeal.

C.S.A. §§ 9791–9799.6 (the Act), violate an individual's right to due process of law by requiring him to rebut the statutory presumption that he is a sexually violent predator.

■ ¶ 5 We begin by addressing Appellant's sixth and final contention, as we find it to be dispositive. Appellant argues that the section of the Act governing the registration of sexual offenders, commonly known as "Megan's Law" (hereinafter Megan's Law), which imposes the presumption that an individual who has been convicted of an "enumerated offense" is a "sexually violent predator" and requires an individual to rebut such presumption by clear and convincing evidence, violates the individual's right to due process of law. Appellant's Brief at 22–23. Appellant relies on this Court's decision in *Commonwealth v. Halye*, 719 A.2d 763 (Pa.Super.1998) (*en banc*), to support his position.

¶ 6 In *Halye*, this Court concluded that the due process clause of the federal constitution is violated by the provisions of the Act which require the offender to rebut a presumption and which do not impose upon the prosecution the burden of persuasion by clear and convincing evidence. *Id.* at 769. This Court struck as unconstitutional § 9794 of Title 42 and all remaining sections of the Act which refer to the designation of a "sexually violent predator." *Id.* Appellant maintains that based on *Halye*, his sentence is unconstitutional and should therefore be vacated.

¶ 7 The Commonwealth counters that Appellant has waived this claim. We disagree. Appellant first raised this issue in his "Motion For Extraordinary Relief Challenging the Constitutionality of the 'Sexually Violent Predator' Provisions of Pennsylvania's Megan's Law, And To Bar A Second Prosecution For the Same Offense," filed August 13, 1997. Appellant next raised the issue in the court below in his Pa.R.A.P.1925(b) Statement, filed on

January 14, 1998.[9] In his original *pro se* brief to this Court, Appellant did not raise or brief this issue. However, after this Court directed the case to be argued *en banc*, the Court allowed Appellant to file a substitute brief. Appellant thereafter filed a "Substitute Brief" which included his challenge to Megan's Law. Appellant's Substitute Brief, in effect, replaced his original *pro se* brief. Appellant therefore has properly raised his Megan's Law claim in both the trial court and this Court. As such, the claim is preserved for appellate review.

¶ 8 After reviewing this issue, we find it to be meritorious. The Supreme Court of Pennsylvania recently definitively resolved this question and confirmed *Halye* in *Williams* and *Gaffney, supra.* We are thus constrained to vacate judgment of sentence and remand this matter for resentencing pursuant to *Williams, Gaffney*, and *Halye, supra.*

¶ 9 Notwithstanding our disposition of this case, we shall also address Appellant's remaining five issues. In light of our status as an intermediate appellate court, we cannot predict the future course of this matter, which may include further appellate review. *Commonwealth v. Byrd*, 409 Pa.Super. 611, 598 A.2d 1011, 1014 (1991). Consideration of the remainder of Appellant's issues is accordingly in order. *Id.*

■ ¶ 10 Appellant's first four issues all concern 42 Pa.C.S.A. § 9714, which states in relevant part:

(a) Mandatory sentence.-
(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or

9. We note that the *Halye* decision was filed    October 6, 1998.

should have known of the penalties under this paragraph shall not be required. **Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.**

42 Pa.C.S.A. § 9714(a) (emphasis added).

■ ¶ 11 Appellant first argues that section 9714 [10] violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions. A law will be found to be constitutionally infirm on grounds that it is an *ex post facto* law only where one of the following is present:

1. The law makes an act criminal which was not criminal when done;

2. The law aggravates a crime [-] one which makes it greater than it was when committed;

3. **The law changes a punishment, and makes it greater than it was when a punishable act was committed;**

4. The law alters the rules of evidence and requires less or different testimony than the law required at the time the offense was committed in order to be convicted.

*Commonwealth v. Grady*, 337 Pa.Super. 174, 486 A.2d 962, 964 (1984) (emphasis added).

¶ 12 Appellant specifically claims that section 9714, as applied to him, is an *ex post facto* law because it includes convictions occurring before enactment of the present version of the statute. We disagree. Appellant committed the crimes on November 30, 1996 and December 8, 1996. The current version of the statute became effective prior to the commission of the offenses for which Appellant was sentenced on September 24, 1997. *See* Act of 1995, Oct. 11, P.L. 1058, No. 21 (Spec.Sess. No. 1), § 4, providing that the act is effec-

tive in 60 days. In cases such as this, where a version of a statute is enacted prior to a defendant being sentenced, this Court has rejected the argument that this constitutes an *ex post facto* law. *See Commonwealth v. Scott*, 345 Pa.Super. 86, 497 A.2d 656, 657 (1985) (holding that the statute imposing a life sentence for conviction of third-degree murder on anyone who had previously been convicted at any time of murder or manslaughter did not violate the *ex post facto* clause where the crime committed by defendant after the effective date was what brought defendant within the ambit of the statute, not the prior crime which was used for enhancement purposes). *See also Commonwealth v. Grady*, 486 A.2d at 963 (upholding recidivist provision of the drunk driving law, 75 Pa.C.S.A. § 3731, against a similar *ex post facto* challenge). We similarly find that the trial judge's application of section 9714 did not and could not increase the sentences Appellant received for his prior attempted rape convictions. The law in this case applied prospectively only to future offenses and did not change the punishment for the predicate offenses. Accordingly, we find Appellant's argument to be without merit.

■ ¶ 13 Appellant's second claim is that section 9714 is unconstitutionally vague. Specifically, Appellant contends that under section 9714(2), a "strike three" offender will be sentenced to imprisonment without parole if a sentencing judge "determines that 25 years of total confinement is insufficient to protect the public safety." 42 Pa.C.S.A. § 9714(2), *supra*. Appellant argues that the statute's failure to define the terms "protect the public safety," creates a constitutional infirmity because neither the sentencing court nor the defendant are reasonably advised as to what these terms mean. Appellant's Substitute Brief at 16.

**10.** We note that Appellant repeatedly refers to this section as "the three strikes legislation." For clarity and ease of discussion, we will use the proper name of the section in this opinion.

¶ 14 We begin by noting that there is a strong presumption in law that legislative enactments are constitutional. *Commonwealth v. Barud*, 545 Pa. 297, 304, 681 A.2d 162, 165 (1996). There is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. *Id.* A statute will only be found unconstitutional if it clearly, palpably and plainly violates the Constitution. *Id.* As generally stated, the void for vagueness doctrine requires that the penal statute define a criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Id.* Due process requirements are satisfied if the statute provides reasonable standards by which a person may gauge his or her future conduct. *Id.* at 305, 681 A.2d at 165.

¶ 15 A law is void on its face and violative of due process if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Commonwealth v. Savich*, 716 A.2d 1251, 1255 (Pa.Super.1998), *appeal denied*, 738 A.2d 457, 1999 Pa. Lexis 784 (1999). The constitutional prohibition against vagueness does not invalidate every statute that could have been drafted with greater precision, but we must consider the essential fairness of the law and the impracticability of drafting the legislation with greater specificity. *Id.* Due process simply requires that the statute be drafted with sufficient definiteness that it is not susceptible to arbitrary and discriminatory enforcement. *Id.*

¶ 16 In the present case, Appellant claims that the phrase "protect the public safety" is vague and, therefore, the statute is unconstitutional. We disagree. We find the language in section 9714 to be analogous to the language in section 9721(b), which states specifically that the court shall impose confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. 42 Pa.C.S.A. § 9721(b) (emphasis added). We find that section 9714 is *in pari materia* with section 9721. Statutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things. *See* 1 Pa.C.S.A. § 1932. Statutes *in pari materia* shall be construed together, if possible, as one statute. *Id.* We find that the same phraseology is used in each of these statutes. Thus, the same construction must necessarily be given to both sections.

¶ 17 Courts routinely sentence defendants under section 9721. A review of relevant caselaw reveals that case after case employs the phrase "protection of the public," without further explanation. *See Commonwealth v. Jones*, 433 Pa.Super. 266, 640 A.2d 914, 917 (1994) (only constraints placed on sentencing court's discretion are that sentence imposed must be within statutory limits, that record must show consideration of sentencing guidelines in light of public protection, gravity of offense, and rehabilitative needs of defendant); *Commonwealth v. Munson*, 419 Pa.Super. 238, 615 A.2d 343, 345 (1992) (sentencing court must impose sentence consistent with protection of public, gravity of offense as it relates to impact on life of victim and community, and rehabilitative needs of defendant); *Commonwealth v. Lawson*, 437 Pa.Super. 521, 650 A.2d 876, 881 (1994), *appeal denied*, 540 Pa. 596, 655 A.2d 985 (sentence imposed should be consistent with need to protect public and rehabilitative needs of defendant). A judge is required each day to employ his or her discretion in sentencing offenders. We believe that the language at issue in section 9714 requires no more "line drawing" than is commonly required of a factfinder in any lawsuit. Accordingly, trial courts can exercise their discretion and sentence defendants under section 9714. The language in section 9714 is not so vague that persons of ordinary intelligence

must necessarily guess at its meaning or differ as to its application. The phrase "protection of the public" and what is "insufficient to protect the public safety" are phrases commonly understood. We conclude that the language at issue is drafted with sufficient definiteness and that it is not susceptible to arbitrary and discriminatory enforcement. Accordingly, we find this argument to be without merit.

■■■ ¶ 18 Appellant next argues that section 9714 violates due process by failing to define the burden of proof necessary to determine what is "insufficient to protect the public safety." However, our review of Appellant's brief reveals that Appellant neither cites any authority in support of his claim nor develops it in his argument. This Court has held that the argument section of an appellant's brief must include a relevant discussion of points raised along with citations to pertinent authorities. *Commonwealth v. Zewe*, 444 Pa.Super. 17, 663 A.2d 195, 196 (1995), *appeal denied,* 544 Pa. 629, 675 A.2d 1248 (1996). *See also* Pa.R.A.P. 2119(a) (argument shall be followed by such discussion and citation of authorities as are deemed pertinent). Accordingly, we find that Appellant has waived this claim. *Commonwealth v. Luktisch*, 451 Pa.Super. 500, 680 A.2d 877 (1996) (finding issue waived where defendant failed to develop it in argument and cited no authority).

■■■ ¶ 19 In his next allegation of error, Appellant asserts that the statute violates due process by requiring the Commonwealth to prove the existence of predicate offenses by a preponderance of the evidence. In *Commonwealth v. Allen*, the Supreme Court of Pennsylvania held that "the preponderance standard prescribed in section 9714 satisfies the minimum requirements of due process." *Commonwealth v. Allen*, 508 Pa. 114, 121, 494 A.2d 1067, 1071 (1985). In *Allen*, the Court rejected the notion that due process requires a higher standard of proof than a preponderance of the evidence in mandatory sentencing proceedings. *Id.*

The Supreme Court reasoned that, in assessing the constitutionality of the preponderance standard, it must weigh the liberty interest of the defendant against the Commonwealth's interest in imposing a mandatory sentence and determine how the risk of error should be distributed between those two parties in the sentencing proceeding. *Id.* (citations omitted). The Court went on to state, "[t]he Commonwealth's interest in protecting the public, punishing violent repeat offenders and deterring violent crime is at least as great as the convicted defendant's interest in leniency. The risk of error, moreover, is minimal. The existence of a prior conviction is a simple historical fact which may be ascertained through official documents." *Id. See also Commonwealth v. Freeman*, 356 Pa.Super. 332, 514 A.2d 884 (1986), *appeal denied,* 514 Pa. 642, 523 A.2d 1130 (1987) (holding that defendant's due process rights were not violated by application of the Mandatory Sentencing Act). As such, no relief is due on this claim.

■■■ ¶ 20 Lastly, we address Appellant's contention that the imposition of two consecutive life sentences was excessive and unduly harsh and constituted an abuse of discretion by the trial court. This issue presents a challenge to the discretionary aspects of sentence rather than the legality of sentence. *See Commonwealth v. Nelson*, 446 Pa.Super. 240, 666 A.2d 714, 720 (1995), *appeal denied,* 544 Pa. 605, 674 A.2d 1069 (1996) (regarding claim of excessiveness of sentence as a challenge to the discretionary aspects of sentence). The right to appeal a discretionary aspect of sentence is not absolute. *Commonwealth v. Barzyk*, 692 A.2d 211, 216 (Pa.Super.1997). Rather, a party who desires to raise such matters must petition this court for permission to appeal and demonstrate that there is a substantial question that the sentence is inappropriate. 42 Pa. C.S.A. § 9781(b); *Commonwealth v. Cappellini*, 456 Pa.Super. 498, 690 A.2d 1220, 1227 (1997).

¶ 21 The determination of whether a particular issue constitutes a substantial question as to the appropriateness of sentence must be evaluated on a case-by-case basis. *Barzyk*, 692 A.2d at 216. It is only where an aggrieved party can articulate clear reasons why the sentence imposed by the trial court compromises the sentencing scheme as a whole that we will find a substantial question and review the decision of the trial court. *Id.* We will grant an appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. *Barzyk* and *Cappellini, supra.*

¶ 22 In fulfilling this requirement, the party seeking to appeal must include in his or her brief a concise statement of the reasons relied upon in support of the petition for allowance of appeal. Pa.R.A.P. Rule 2119(f), 42 Pa.C.S.A.; *Commonwealth v. Saranchak*, 544 Pa. 158, 176, 675 A.2d 268, 277 (1996), *cert. denied*, 519 U.S. 1061, 117 S.Ct. 695, 136 L.Ed.2d 617 (1997). Appellant has complied with this requirement.

¶ 23 We first note that this Court has held that a claim of excessiveness of sentence does not raise a substantial question where the sentence is within the statutory limits. *Nelson*, 666 A.2d at 720. In this case, the sentence imposed was within the statutory limits. Further, an allegation that a sentencing court failed to consider certain factors does not raise a substantial question. *Id.*

¶ 24 However, Appellant also contends that the court failed to place its reasons on the record for imposing the sentence. An allegation that the sentencing court did not adequately set forth its reasons on the record does present a substantial question. *Commonwealth v. Jones*, 418 Pa.Super. 93, 613 A.2d 587, 590 (1992) (*en banc*), *appeal denied*, 535 Pa.

615, 629 A.2d 1377 (1993). Accordingly, we will address this claim.

¶ 25 The Supreme Court of Pennsylvania has outlined the standard which governs whether a sentencing court has properly stated its reasons for imposing sentence and stated:

> Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself.... Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.

*Commonwealth v. Devers*, 519 Pa. 88, 101–102, 546 A.2d 12, 18 (1988). Therefore, this requirement is met if the court states on the record that it has consulted a pre-sentence report. *Id.*

> The standard of review in sentencing matters is well settled. Imposition of a sentence is vested in the discretion of the sentencing court[, whose decision] will not be disturbed absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment.... [O]n appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Smith*, 543 Pa. 566, 570–571, 673 A.2d 893, 895 (1996) (citations omitted). Moreover, when reviewing sentencing matters, we must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. *Commonwealth v. Clever*, 395 Pa.Super. 192, 576 A.2d 1108, 1110 (1990). Where the court's sentencing colloquy "shows consideration of the defendant's circumstances, prior criminal

record, personal characteristics and rehabilitative potential, and the record indicates that the court had the benefit of the presentence report, an adequate statement of the reasons for the sentence imposed has been given." *Commonwealth v. Phillips*, 411 Pa.Super. 329, 601 A.2d 816, 823–24 (1992) (citations omitted).

¶ 26  In the present case, the trial court met the requirements as set forth in *Devers*. The trial court stated on the record that the presentence investigation report was to be made a part of the record. N.T. Sentencing 9/24/97, at 8. The judge stated specifically that the presentence report "[has] a direct impact on the ultimate issue as to sentencing on which this Court continued to rely." *Id.* The trial court went on to discuss its reasons for the sentence imposed. *Id.* at 9–14. The court indicated that it had struggled with the sentence in this case and that sentence would not be lightly imposed. *Id.* at 13. The judge stated that he did not feel that jail time would serve or cure Appellant's problem. *Id.* The judge took into consideration Appellant's mindset and his antisocial behavior. *Id.* The judge noted the emotion displayed in the victim impact statements as well as Appellant's own comments. *Id.* After considering all these facts, the trial court concluded that a sentence of 25 to 50 years would be insufficient to protect the public safety.

¶ 27  In the present case, a sentence of life imprisonment without parole is only to be imposed upon a finding that "25 years of total confinement is insufficient to protect the public safety." 42 Pa.C.S.A. § 9714(a)(2). The trial judge found that 25 to 50 years would be insufficient to protect the public safety. N.T. Sentencing, 9/24/97, at 13–14. We find that the judge placed sufficient reasons on the record for imposition of the first life sentence. However, we further find that the trial judge did not provide sufficient justification on the record as to the reasons a second life sentence would be necessary. Once the court imposed the first life sentence, it then needed to explain on the record why a second consecutive life sentence was necessary to protect the public safety. As such, upon remand for resentencing, the trial court is free to impose any sentence it deems appropriate so long as the trial court sufficiently justifies its reasons on the record for the sentences imposed.

¶ 28  Judgment of sentence vacated. Remanded for resentencing. Jurisdiction relinquished.

¶ 29  DEL SOLE, J. files Concurring and Dissenting Opinion.

¶ 30  JOHNSON, J. files Concurring and Dissenting Opinion, in which CAVANAUGH, J. and MUSMANNO, J. join.

¶ 31  ORIE MELVIN, J. files Concurring Statement.

DEL SOLE, J., concurring and dissenting.

¶ 1  I join Judge Joyce in finding that 42 Pa.C.S.A. § 9714 is constitutional and in vacating the second life sentence. However, I would also vacate the first life sentence and remand for resentencing. While the trial court has the discretion to impose a life sentence there must first be a determination that this sentence is necessary to protect public safety. The burden is on the Commonwealth to establish the threat at the sentencing hearing. *Commonwealth v. Williams*, 557 Pa. 285, 733 A.2d 593 (1999), *Commonwealth v. Halye*, 719 A.2d 763 (Pa.Super.1998).

¶ 2  Here based on his pleas, the defendant was facing potential consecutive sentences with a minimum penalty of over fifty years and a maximum penalty of over one hundred years. There is no finding nor any testimony that this sentence is insufficient to protect the public. I would require such.

¶ 3  A trial court's discretion in imposing sentence is not without limitation, and the exercise of that discretion must have a

reasonable relationship to the evidence presented at the sentencing hearing.

JOHNSON, J., concurring and dissenting:

¶ 1 I agree with my distinguished colleagues that this Court's decision in *Commonwealth v. Halye*, 719 A.2d 763 (Pa.Super.1998) (en banc) is dispositive of the sixth issue raised by Timothy Nathan Brown on this appeal. In *Halye*, we concluded that Section 9794 of the Registration of Sexual Offenders Act, 42 Pa.C.S. §§ 9791–9799.6 (the Act) violates the due process clause of the federal constitution. *Id.* at 769. As a consequence, we struck as unconstitutional "§ 9794 of Title 42 and all remaining sections of the Act which refer to the designation of a 'sexually violent predator.' " *Id.*

¶ 2 I also agree that Brown's first issue, whether 42 Pa.C.S. § 9714 violates the *ex post facto* clause of the federal constitution, is without merit. Moreover, I agree that no relief is due Brown on the claim set forth in his third issue that the statute violates due process by requiring the Commonwealth to prove the existence of predicate offenses by a mere preponderance of the evidence. Finally, I also join my distinguished colleagues in concluding that Brown, in his fourth issue, has failed to adequately develop his argument that Section 9714(a)(2) is unconstitutionally vague in failing to define the standard of proof necessary to determine what is "insufficient to protect public safety."

¶ 3 However, I respectfully disagree with my distinguished colleagues that the dispositive issue here is Brown's sixth and final contention, inquiring whether 42 Pa. C.S. § 9794 violates both the United States and Pennsylvania Constitutions by creating a presumption that an individual who has been convicted of an "enumerated offense" is a "sexually violent predator" and then requiring such an individual to rebut the presumption by clear and convincing evidence. Rather, this Court must address the overriding issue of whether 42 Pa.C.S. § 9714(a)(2), *the statute that gave the court its sentencing authority,* is unconstitutional, as encompassed in Brown's second issue.

¶ 4 Initially, as noted by the majority, our Supreme Court has recently struck, as unconstitutional, all of those provisions of 42 Pa.C.S. §§ 9791–9799.6, Subchapter H, entitled Registration of Sexual Offenders (the Act), that refer to the designation "sexually violent predator." *Commonwealth v. Williams,* 557 Pa. 285, 733 A.2d 593, 608, 1999 Pa. LEXIS 1878, at *48 (1999). Nevertheless, *Williams* is not controlling here because, as discussed *infra,* the court, in sentencing Brown under Section 9714(a)(2), merely "borrowed" the designation "sexually violent predator" from the Act without following any of the due process procedures specified therein. Consequently, the actions of the court must be reviewed based upon the provisions set forth in Section 9714, the sentencing statute under which the court here took action.

¶ 5 After reviewing the actions of the court here *vis a vis* Section 9714, I conclude that the language contained in that section fails to provide due process safeguards as required by both the United States and the Pennsylvania Constitutions. I also believe that the reasons supplied by the trial court, at the time of sentencing, for imposing two consecutive life sentences do not satisfy the requirements of the Sentencing Code, 42 Pa.C.S. §§ 9714, 9721. Accordingly, I must respectfully dissent.

¶ 6 At the time of Brown's sentencing, the Commonwealth provided the requisite documentation of Brown's two prior convictions for attempted rape. The court then determined that the mandatory minimum sentence of twenty-five to fifty years' imprisonment under Section 9714(a)(2) and (a.1) was insufficient to protect the public safety. Consequently, the court sentenced Brown to two consecutive sentences of life without parole based on the rape and crim-

inal attempt (rape) convictions, with all other sentences to run concurrently.

¶ 7 I find meritorious Brown's argument that Section 9714(a)(2) violates his due process rights under the United States and Pennsylvania Constitutions because the statute fails to provide definitive standards to guide the exercise of the court's discretion in sentencing. Brown asserts that any determination under Section 9714(a)(2) that twenty-five years is "insufficient to protect the public safety" is arbitrary because the statute does not define what is sufficient to qualify for a sentence of less than life. Brown specifically cites to his own case where the court imposed two consecutive life sentences.

¶ 8 Our scope of review is plenary. Our standard of review is clear. When construing statutory provisions, we must remember that enactments of the General Assembly enjoy a strong presumption of constitutionality. *Commonwealth v. Barud*, 545 Pa. 297, 304, 681 A.2d 162, 165 (1996). All doubts are to be resolved in favor of sustaining the constitutionality of the legislation. *Commonwealth v. Blystone*, 519 Pa. 450, 463, 549 A.2d 81, 87 (1988), *aff'd*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990). "Nothing but a clear violation of the Constitution – a clear usurpation of powers prohibited – will justify the judicial department in pronouncing an act of [the] legislative department unconstitutional and void." *Glancey v. Casey*, 447 Pa. 77, 88, 288 A.2d 812, 818 (1972) (quoting *Busser v. Snyder*, 282 Pa. 440, 449, 128 A. 80, 83 (1925)). In other words, "we are obliged to exercise every reasonable attempt to vindicate the constitutionality of a statute and uphold its provisions." *Commonwealth v. Chilcote*, 396 Pa.Super. 106, 118–20, 578 A.2d 429, 435 (1990) (citing *Commonwealth v. Trill*, 374 Pa.Super. 549, 569–71, 543 A.2d 1106, 1116 (1988)). " 'The right of the judiciary to declare a statute void, and to arrest its execution, is one which, in the opinion of all courts, is coupled with responsibilities so grave that it is never to be exercised except in very clear cases.' " *Schubach v. Silver*, 461 Pa. 366, 381, n. 12 336 A.2d 328, 335 n. 12 (1975) (quoting *Erie & North– East Railroad Co. v. Casey*, 26 Pa. 287, 300–301 (1856)). Therefore, in order for an act to be declared unconstitutional, the challenging party must prove that the act "clearly, palpably and plainly" violates the constitution. *Barud*, 545 Pa. at 304, 681 A.2d at 165.

¶ 9 The constitutional protection upon which Brown relies is independently based in the due process clause of the United States Constitution and the law of the land clause of the Pennsylvania Constitution. U.S. Const. amend. XIV; Pa. Const. art. I, § 9. These provisions guarantee that a person is not to be deprived of life, liberty, or property without due process of law (Fourteenth Amendment) or unless by the law of the land (Article 1, Section 9). "The terms 'law of the land' and 'due process of law' are legal equivalents." *Chilcote*, 578 A.2d at 434 (quoting *Commonwealth v. Heck*, 341 Pa.Super. 183, 491 A.2d 212 (1985), *aff'd*, 517 Pa. 192, 535 A.2d 575 (1987)).

¶ 10 " '[D]ue process of law and the equal protection of the laws are secured if the laws operate on all alike and do not subject the individual to an arbitrary exercise of the powers of government.' " *Application of Christy*, 362 Pa. 347, 351, 67 A.2d 85, 87 (1949) (quoting *Duncan v. Missouri*, 152 U.S. 377, 382, 14 S.Ct. 570, 38 L.Ed. 485 (1894)). "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (footnote omitted). Thus, a criminal statute must contain standards capable of consistent application.

¶ 11 Before proceeding with my own analysis of Brown's second claim, I would respectfully submit that my colleagues' review of that claim is too narrowly focused. Admittedly, Brown asserts that the "crucial statutory terminology" is the phrase "protect the public safety." Substitute Brief for Appellant at 16. My colleagues focus on this phrase and find it to be "analogous to the language in section 9721(b)." Majority at 733. The majority then asserts that "[t]he phrase 'protection of the public' and what is 'insufficient to protect the public safety' are phrases commonly understood," without any analysis whatsoever of the latter phrase. *Id.* at 734. The majority concludes that the language that it has posited to be at issue "is drafted with sufficient definiteness and that it is not susceptible to arbitrary and discriminatory enforcement." *Id.* I find fault with my colleagues' analysis and, consequently, their conclusion.

¶ 12 In his brief, Brown argues:

The determination of *what is or is not sufficient to protect the public safety* clearly becomes an arbitrary decision which the court will inevitably make. Upon a determination that a defendant has been convicted of three crimes of violence, the court may sentence the defendant to twenty-five (25) years incarceration or a life sentence of incarceration. The statute fails to define *what is sufficient to satisfy a sentence of less than life.* Additionally, the statute fails to define what the "protect[ion of] public safety" means. Nor are there any definitive guidelines which will assist the courts in determining whether twenty-five (25) years['] incarceration will be *sufficient to protect the public safety.*

Substitute Brief for Appellant at 16 (emphasis added). My reading of Brown's Substitute Brief forces me to conclude that the statutory phrase requiring analysis is the phrase: "insufficient to protect the public safety" and not merely the shortened phrase: "protect the public safety."

This must be so, since the discretionary power of the sentencing court is not triggered unless and until a finding of insufficiency has been made.

¶ 13 I now turn to the question of whether the requirements of due process apply to a court's determination of whether twenty-five years of total confinement is "insufficient to protect the public safety." To decide whether any due process protections must be afforded, we first determine

whether the nature of the interest is one within the contemplation of the liberty or property language of the Fourteenth Amendment. Once it is determined that due process applies, the question remains what process is due.... [C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by governmental action.

*Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (citations and internal quotations marks omitted).

¶ 14 Clearly, the nature of the private interest involved here is within the contemplation of the liberty language of the Fourteenth Amendment. *See Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty."); *Commonwealth v. Allen*, 508 Pa. 114, 121, 494 A.2d 1067, 1071 (1985) (stating that when a defendant has been convicted and is awaiting sentence, his or her right to be free from confinement has been extinguished). The nature of the government function involved is the authority to establish appropriate penalties for the commission of crime, which is a function of the Legislature. *Commonwealth v. Claudy*, 173 Pa.Super. 410, 413–15, 98 A.2d 225, 227 (1953). Thus, this Court has held that "since a person's liberty is at stake in a sentencing procedure, it obviously involves the depri-

vation of due process if the procedure is improper." *Commonwealth v. Walker*, 286 Pa.Super. 239, 241–42, 428 A.2d 661, 662 (1981). *See also Commonwealth v. Taylor*, 346 Pa.Super. 599, 604–06, 500 A.2d 110, 113 (1985), *aff'd*, 516 Pa. 21, 531 A.2d 1111 (1987) ("It is clear, however, that the sentencing process is subject to the due process clause.").

¶ 15 Although both the Pennsylvania Constitution and the United States Constitution prohibit the delegation of the legislative function,

the legislature may confer authority and discretion upon another body in connection with the execution of a law. Where the legislature sets primary standards, it may impose the duty to carry out the legislative policy on another governmental unit.... However, such a grant of authority must contain adequate standards to guide and restrain the exercise of the delegated administrative function.

*Commonwealth v. Parker White Metal Co.*, 512 Pa. 74, 95, 515 A.2d 1358, 1369 (1986) (internal quotation marks omitted).

¶ 16 The portions of Section 9714 that pertain to an offender who has previously been convicted of two or more crimes of violence read as follows:

§ 9714. Sentences for second and subsequent offenses

(a) Mandatory sentence.—

* * * *

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required.

*Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.*

* * * *

(d) Proof at sentencing.—Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this provision shall be determined at sentencing. The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section. Should a previous conviction be vacated and an acquittal or final discharge entered subsequent to imposition of sentence under this section, the offender shall have the right to petition the sentencing court for reconsideration of sentence if this sentence would not have been applicable except for the conviction which was vacated.

42 Pa.C.S. § 9714(a)(2), (d) (emphasis added).

¶ 17 Section 9714 also provides that where a defendant is to be sentenced un-

der the two strikes portion of the statute, the court must follow certain procedures that include conducting a hearing to determine if the offender is a "high risk dangerous offender" and considering the twelve factors listed in that section. *See* 42 Pa. C.S. § 9714(c)(1)–(5). Conspicuously absent from this statute, however, is a procedure by which the court determines whether twenty-five years of total confinement is "insufficient to protect the public safety" prior to the sentencing of a three strike offender under Section 9714(a)(2).

¶ 18 Consideration of the contemporaneous legislative history of this provision reveals that the General Assembly was aware of this deficiency prior to passage of the underlying bill. In 1978, when the enabling legislation for the Pennsylvania Sentencing Guidelines was introduced, Representative Scirica stated that "[t]he purpose of the amendment is to make criminal sentences more rational and consistent, to eliminate unwarranted disparity in sentencing, and to restrict the unfettered discretion we give to sentencing judges." Pa. House Journal, 3130 (September 21, 1978). These purposes are clearly in accord with due process protections under the United States and Pennsylvania Constitutions. However, when the 1995 amendment at issue was being considered in the Senate, the legislative journal reflects that the statute was intended to give the sentencing judge complete discretion in determining whether a twenty-five year sentence would be "insufficient to protect the public safety." Senator Greenleaf, who offered the 1995 amendment, remarked:

[W]e have given the court the discretion to give the offender life imprisonment. If he feels this guy should not be out even at 70 years of age, then the judge has the right to do that.... And if you give him life, and if the judge thinks it is appropriate, this bill provides for that as well. But I think it is important to give that judge the opportunity to decide whether it should be 25 years to 50 years or life imprisonment.

Pa. Senate Journal, 1ˢᵗ Spec. Sess. at 254 (September 18, 1995). *See also id.* at 255–56. Prior to voting on Senator Greenleaf's amendment, Senator Andrezeski offered an amendment that would mandate life imprisonment when a defendant is convicted of his third violent crime. Senator Mellow remarked:

If you vote for Senator Andrezeski's amendment, you are in favor of a person spending the rest of his life in jail for committing a violent crime for the third time. If you vote against Senator Andrezeski's amendment and in favor of what Senator Greenleaf wants, then you are prepared to leave that discretion up to the judiciary. So let us say it exactly the way it is.

*Id.* at 256. By enacting Senator Greenleaf's version, the legislature was aware of the discretion it was giving to the judiciary under Section 9714(a)(2).

¶ 19 In addition, the journals also reflect that both the Senate and the House understood that no hearing would take place to determine whether twenty-five years to life is "insufficient to protect the public safety." Senator Greenleaf unequivocally stated that "if you are convicted of that third offense, ... [t]here is no hearing.... [Y]ou are in the penitentiary for 25 years to 50 years, ... possibly longer, and maybe life." *Id.* at 256. When the House considered the amendment, after noting that under the two strikes provision a hearing is held to determine if the convicted defendant is a high-risk dangerous offender, Representative Piccola remarked that "there is no hearing, as Mr. Blaum indicated, after the third offense." Pa. House Journal, 406 (October 3, 1995). Clearly, then, in addition to giving the judiciary complete discretion to determine whether sentencing a third strike offender to twenty-five years' imprisonment is "insufficient to protect the public safety," the legislature did not intend for that determination to be made at

an independent hearing held before sentencing. Thus, I now look to case law to determine whether due process standards apply when the court is given complete discretion to determine whether a sentence of twenty-five years to life is "insufficient to protect the public safety."

¶ 20  In *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), the United States Supreme Court found the Colorado Sex Offenders Act to be unconstitutional because it lacked due process protections. *Id.* at 610–11, 87 S.Ct. 1209. There, the defendant was convicted of a sex offense that carried a ten-year sentence of imprisonment. Under the Colorado Sex Offenders Act, the court could sentence the defendant for an indeterminate term from one day to life if the court was "of the opinion that," if at large, the defendant would constitute "a threat of bodily harm to members of the public, or is an habitual offender and mentally ill." *Id.* at 607, 87 S.Ct. 1209 (quoting Colo.Rev. Stat. Ann. § 39–19–1 (1963)). Pursuant to the Act, the trial court subjected the defendant to a psychiatric examination. Then, based on the psychiatric report provided previously to the court, without a hearing or right of confrontation, the court sentenced the defendant to an indeterminate term of one day to life.

¶ 21  In *Specht*, the Court began its opinion by reaffirming its ruling first laid down in *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), that "the Due Process Clause of the Fourteenth Amendment did not require a judge to have hearings and to give a convicted person an opportunity to participate in those hearings when he came to determine the sentence to be imposed." *Id.* at 606, 87 S.Ct. 1209. The Court reasoned that the type of reports relied upon by conscientious judges, such as a probation report, concern " 'every aspect of a defendant's life. The type and extent of this information make totally impracticable if not impossible open court testimony with cross-examination. Such a procedure could end-

lessly delay criminal administration in a retrial of collateral issues.' " *Id.* (quoting *Williams*, 337 U.S. at 249–50, 69 S.Ct. 1079). Nevertheless, the Court refused to apply the rule of the *Williams* case to the Colorado statute before it. The Court concluded that the determination of "whether a person constitutes a threat of bodily harm to members of the public or is an habitual offender and mentally ill" was "a new finding of fact that was not an ingredient of the offense charged." *Id.* at 608, 87 S.Ct. 1209 (citation omitted). The Court analogized the case to "recidivist statutes where an habitual criminal issue is a distinct issue, on which a defendant must receive reasonable notice and an opportunity to be heard." *Id.* at 610, 87 S.Ct. 1209 (citation and internal quotation marks omitted). The Court determined that such a hearing constitutes a separate criminal proceeding, and, consequently, the petitioner was entitled " 'to the full panoply of the relevant protections which due process guarantees in state criminal proceedings.' " *Id.* (quoting *Gerchman v. Maroney*, 355 F.2d 302, 312 (3 rd Cir.1965)).

¶ 22  In *Gerchman*, the United States Court of Appeals for the Third Circuit reviewed a comparable Pennsylvania statute, the Barr–Walker Act of January 8, 1952, P.L. 1851, Pa. Stat. Ann. tit. 19, §§ 1166–1174 (repealed and replaced by 42 Pa.C.S. § 9721 [Sentencing Alternatives] ). The Act provided that if the court was of the opinion that the person before it, who had been convicted of either indecent assault, incest, assault with intent to commit sodomy, solicitation to commit sodomy, sodomy, assault with intent to ravish or rape, would, "if at large, constitute a threat of bodily harm to members of the public, or is an habitual offender or mentally ill," the court could, in lieu of other sentences provided by law, sentence the person to a state institution for an indeterminate term from one day to life. *Gerchman*, 355 F.2d at 304.

¶ 23  After Gerchman was convicted, the sentencing court announced that it

would invoke the Barr–Walker procedure. At sentencing, the court found the petitioner to constitute "a threat of bodily harm to members of the public" if at large. *Id.* at 306. The court made this determination based solely on a letter signed by the Department's Commissioner of Mental Health, a psychiatric report for the court's "confidential use," and a report on the presentence investigation. However, prior to making this finding, the court asked Gerchman if he had any comment or anything to say, to which Gerchman's counsel replied that he did not. The court clearly invited Gerchman to come forward to tell the court why sentence should not be imposed or to say anything he wanted to say in connection with the case. In point of fact, the court told Gerchman's attorney that "you had better make it amply clear to him that this is his day in Court and he may take the stand and testify if he wishes." *Id.* However, Gerchman did not take the stand. The court then made its finding and sentenced Gerchman to undergo imprisonment for not less than one day and not more than the term of his natural life.

¶ 24 Upon review, the Third Circuit concluded that Gerchman's due process rights were violated "by a determination made at a hearing at which the only evidence against him was the Commissioner's report to the court containing ultimate findings of fact based upon reports of a "confidential" psychiatric examination and a probation investigation." *Id.* at 309. Because neither the Commissioner nor anyone who reported to him appeared at Gerchman's sentencing hearing, the Third Circuit determined that Gerchman was not provided an opportunity to confront them or cross-examine them regarding the findings of the Commissioner. Though in the instant case the report provided to the sentencing court was not confidential, and in fact, Brown was provided a copy prior to sentencing, I find the facts in *Gerchman* to be sufficiently analogous.

¶ 25 The Third Circuit found the court's determination that Gerchman constituted "a threat of bodily harm to members of the public" to be a new finding of fact. *Id.* at 310. The Third Circuit reasoned that before greater punishment than that provided by statute for conviction of the crime could be imposed, the court had to first make an additional finding of fact that was not an element of the crime committed. This determination, essentially, created an independent criminal offense because it is " 'independent of the determination of guilt on the underlying substantive offense.' " *Id.* at 311 (quoting *Oyler v. Boles*, 368 U.S. 448, 452, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)). Thus, the Third Circuit concluded:

> If the determination of the independent issue in *Oyler* [whether one is an habitual offender], limited as it was to judicial records and identity, made the new charge separate from the subordinate offense and thus required full due process, it is surely required here, where the critical new issue, i.e., whether petitioner, if at large, would constitute a danger of bodily harm to the public, is a complex and personal one going far beyond mere records and identification.

*Id. See also Williams*, 557 Pa. 285, 733 A.2d 593, 603, 1999 Pa. LEXIS 1878, at *31–32 ("Given our view, however, that the proceeding set forth in [Section 9794] to determine whether one is a sexually violent predator is a separate factual determination, the end result of which is the imposition of criminal punishment, we hold that anything less than the full panoply of the relevant protections which due process guarantees is violative of the Fourteenth Amendment.").

¶ 26 Based on my review of the legislative history of the statute we now review, and of relevant case law, I conclude that the determination of whether twenty-five years' incarceration is "insufficient to protect the public safety" constitutes a conclusion that must be based upon new findings of fact. *Specht*, 386 U.S. at 608, 87 S.Ct.

1209; *Gerchman,* 355 F.2d at 310; *Williams,* 557 Pa. 285, 733 A.2d 593, 603, 1999 Pa.Lexis 1878, at *31–32. *See also Commonwealth v. Halye,* 719 A.2d 763, 768 (Pa.Super.1998) (determining that the designation "sexually violent predator" is "separate and distinct from both the trial and sentencing and entails a fact-finding function" that demands a high standard of proof). As such, a defendant must be given "the full panoply of the relevant protections which due process guarantees in state criminal proceedings. He must be afforded all those safeguards which are fundamental rights and essential to a fair trial, including the right to confront and cross-examine witnesses against him." *Specht,* 386 U.S. at 609–10, 87 S.Ct. 1209 (quoting *Gerchman,* 355 F.2d at 312). In other words, due process "requires that [the defendant] be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and · to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed." *Id.* at 610, 52 S.Ct. 642.

¶ 27 In the instant case, Brown was denied his due process rights during that portion of the sentencing proceeding where the court determined that a sentence of twenty-five years was "insufficient to protect the public safety." That portion of the proceeding merely consisted of the prosecutor's requesting the court to make the presentence investigation and the State Board report part of the record. Brown's counsel did not object. The court then asked Brown if he wished to add anything to the record for the court's consideration. Brown's counsel told the court that he would not be presenting any evidence regarding the Board's report. N.T. Sentencing, September 24, 1997, at 8–9. The court then remarked that "upon review of the presentence investigation and the assessment board's determination, we find that Timothy Brown is a sexually violent predator as defined. Being that the case, move to sentencing." *Id.* at 9.

¶ 28 Although the sentencing court did invite Brown to participate in the proceedings, such an invitation was insufficient to afford Brown his due process rights. The transcript of the sentencing proceeding reflects that Brown was challenging the registration section of the Registration of Sexual Offenders Act (Megan's Law), 42 Pa. C.S. § 9795; consequently, Brown did not participate in the State Board's assessment. *Id.* at 6. Thus, Brown's counsel would not have presented evidence. Moreover, it would appear that the parties were merely following an accepted practice. The purpose of the proceeding was to sentence Brown. *See id.* at 4 ("Now, from that, we move to sentencing on the matter."). Thus, the parties would not view the report of the State Board in its true nature, but instead would view it, along with the presentence investigation report, as "information furnished to a sentencing judge for use in the exercise of his discretionary power to decide on the appropriate sentence." *Cf. Gerchman,* 355 F.2d at 312.

¶ 29 Moreover, the procedure used by the sentencing court in the instant case to find Brown to be a sexually violent predator, exemplifies the unconstitutional methods a court may use when given complete discretion in sentencing matters. At the time the court found Brown to be a "sexually ·violent predator," Section 9794 required the court to make that determination "based on evidence presented at a *hearing held prior to sentencing* and before the trial judge." 42 Pa.C.S. § 9794(e) (emphasis added). Section 9794 also required the court to provide Brown with a *notice* of this *hearing* to be held prior to sentencing, as well as *notice* of Brown's *"opportunity to be heard, the right to call witnesses, the right to call expert witnesses and the right to cross-examine witnesses." Id.* (emphasis added). Although our Supreme Court has concluded that these procedural rights essentially afforded no due process regarding the finding that a defen-

dant is a sexually violent predator, *see Williams,* 557 Pa. 285, 733 A.2d 593, 602, 1999 Pa. LEXIS 1878, at *30, they were legally binding at the time of sentencing in this case and should have been followed. Nevertheless, the focus of this Court's inquiry must be whether 42 Pa.C.S. § 9714, the statute giving the court its sentencing authority, provides a defendant with due process protections. Based on my review of the language of Section 9714, I find that it does not.

¶ 30 Regarding notice to a defendant, Section 9714 provides only that "reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing." 42 Pa.C.S. 9714(d). Moreover, Section 9714 requires the court to make the determination of whether Section 9714 is applicable at the time of sentencing, rather than at an evidentiary hearing held before sentencing. *Id.* While other subsections outline the procedures to be followed in determining whether the defendant is a "high risk dangerous offender" or whether the defendant was previously convicted, *see* 42 Pa.C.S. § 9714(b)–(d), this section is completely silent as to any procedure required to determine whether twenty-five years is "insufficient to protect the public safety." Consequently, Section 9714 gives complete, and therefore unconstitutional, discretion to the sentencing court in determining whether twenty-five years is "insufficient to protect the public safety."

¶ 31 In summary, the legislature failed to provide explicit standards in Section 9714 to guide and restrain the exercise of the court's discretion in determining whether a twenty-five year sentence is "insufficient to protect the public safety." As a result, the sentencing court reached a conclusion that enhanced Brown's sentence to life imprisonment without affording Brown his due process rights required under both the United States and Pennsylvania Constitutions. *See Specht,* 386 U.S. at 610, 87 S.Ct. 1209; *Gerchman,* 355 F.2d at

311. I would therefore hold that the language challenged here, that is, the last sentence of 9714(a)(2) of the Pennsylvania Mandatory Sentencing Act, is unconstitutional both on its face and as applied in the instant case.

¶ 32 At issue five, Brown further argues that the court abused its discretion in imposing two consecutive life sentences when the court failed to place reasons on the record for doing so. Substitute Brief for Appellant at 19. In reviewing whether the sentencing court has complied with the general standards set forth in the Sentencing Code, our scope of review is limited to the record developed at the time of sentencing. 42 Pa.C.S. § 9721(b); *Commonwealth v. Riggins,* 474 Pa. 115, , 377 A.2d 140, 143–51 (1977); *Commonwealth v. Everett,* 277 Pa.Super. 323, 325 n. 4, 419 A.2d 793, 794 n. 4 (1980).

¶ 33 My review of the Sentencing Transcript leads me to find merit in Brown's contention. At the sentencing hearing, the prosecuting attorney argued to the court that Brown "targets the elderly" and that if Brown were sentenced and later paroled, "he would still be younger than his potential victims and would be a serious threat to those people as well as society at large." N.T. Sentencing, *supra* at 12. The prosecutor went on to argue that "[Brown] is 32 years old and [the victim] was an elderly woman." *Id.* The court then proceeded to put its reasons for the sentence on the record. The court stated:

THE COURT: I understand that.

MR. CHARDO: Seventy-four years old.

THE COURT: I understand that. I understand the circumstances in which you are indicating. In reading the assessment as I read it, reread it, actually took time to re-read it this morning, this is not a sentence that's imposed lightly by any stretch of the imagination. And I struggled with the sentence to be imposed.

I read Mr. Brown's comments on page three of the presentence investigation, of the victim's investigation and it said he did not think the jail time would serve the person's problem.

Well, I think we have a very serious problem here. I think Mr. Brown's antisocial behavior and his mindset is such that it becomes a grave concern to the Court, but in one respect, he may be right unless he believes jail time will cure the problem. However, the whole purpose of Megan's law and the nature of these types of crimes are, one, to protect society and the concerns that this Court had reading the various assessments made, in fact, by two different members of the assessment board come to the same conclusion trying to find where I could deviate from that ultimate determination not only as a sexually violent predator but as to the appropriateness of sentencing through the — essentially not being caught up by the emotion of it as displayed by the victims' statements and whatnot, but as to the comments made by the Defendant himself, this Court is convinced that a sentence of twenty-five to fifty years would not be sufficient to safeguard society under this determination of sexually violent predator and as to this particular Defendant himself.

Accordingly, this 24th day of September, 1997, in the docket of 318 C.D.1997, on the charge of rape, count one, I sentence the Defendant to be housed, fed, kept and clothed in a state Correctional Institution for life without parole.

*Id.* at 12–14.

¶ 34  In reviewing the reasons set forth by the trial court, I do not find a basis for the imposition of two consecutive life sentences. It may well be reasonable to conclude, as did the trial court, *id.* at 14, that a sentence of twenty-five to fifty years' imprisonment would not be sufficient to safeguard society as to this particular defendant, had this finding been made at a hearing that afforded Brown his due pro-cess rights. This would support the imposition of the first life sentence. The trial court provides no reason for the second life sentence.

¶ 35  Brown was convicted of rape, criminal attempt rape, burglary, and unlawful restraint. The trial court imposed life sentences on only the rape and criminal attempt rape charges. However, the statute mandating enhanced minimum sentences includes, as a designated crime of violence: "burglary of a structure adopted for overnight accommodation in which at the time of the offense any person is present." 42 Pa.C.S. § 9714(g). In this case, Brown was convicted of burglary in unlawfully entering the Grayco Apartments on December 8, 1996, with the intention of committing rape. N.T. Guilty Plea, 8/4/97, at 11, 20–21. Rather than impose a life sentence on this conviction, the trial court sentenced Brown to a term of five to ten years' imprisonment, a sentence representing only half of the maximum permitted by law. 18 Pa.C.S. §§ 1103, 3502(a), (d).

¶ 36  I recognize that the imposition of two consecutive life sentences does not, without more, offend our jurisprudence. *Commonwealth v. Button*, 332 Pa.Super. 239, 243–46, 481 A.2d 342, 344–45 (1984). I discern, however, a clear difference between imposing consecutive sentences that are authorized by law based upon the conduct immediately under review, such as murder, and imposing sentences that take into account past conduct and require a subjective evaluation of sufficiency. In *Button*, and in all multiple murder cases, the sentences reflect an acknowledgment that each homicide, standing alone, deserves the maximum punishment provided by our legislature. In the matter now before this Court, the life sentence is only to be imposed upon a finding that "25 years of total confinement is insufficient to protect the public safety." 42 Pa.C.S. § 9714(a)(2). Once the first sentence of life imprisonment without parole has been imposed, the decision to impose the second life sentence without parole should require

a determination that the first life sentence would be insufficient to protect the public safety. Assuming such a determination would not constitute an abuse of discretion, the trial court did not place any such statement on the record.

¶ 37 Had the trial court, pursuant to 42 Pa.C.S. § 9714(a)(2), imposed two consecutive twenty-five to fifty year sentences on Brown, who was 32 years old at the time of sentencing, he would not have been eligible for parole until he was 82 years of age. According to the trial court, were Brown to leave confinement at 82 years of age, "another elderly woman will be attacked when she least expects it." Trial Court's Reasons Relied Upon for Consecutive Life Sentences, 9/30/98, at 3. I am unable to agree that such a determination is free from abuse. While I join my colleagues in finding the crimes that Brown committed both heinous and despicable, I cannot agree that the imposition of consecutive life sentences without parole were either necessary or appropriate in this case.

¶ 38 Therefore, after review of the issues raised by Brown, I would reverse and remand for re-sentencing based on my conclusion that the challenged language in Section 9714(a)(2) of the Pennsylvania Mandatory Sentencing Act violates the United States and Pennsylvania Constitutions because it fails to provide adequate due process safeguards. If, upon further appellate review, it is determined that Section 9714(a)(2) does not offend constitutional principles, I would still maintain that the particular sentence here imposed was excessive and requires remand for re-sentencing.

¶ 39 CAVANAUGH, J. and MUSMANNO, J., joined in this concurring and dissenting opinion.

ORIE MELVIN, J., concurring:

¶ 1 I agree with the Majority's opinion in all respects. I write separately to comment on the need to preserve the trial court's discretion in fashioning a sentence under 42 Pa.C.S.A. § 9714(a)(2). I believe the trial court should have the discretion to selectively impose a sentence based upon the facts and circumstances of each individual case taking into consideration a number of factors including the gravity of the offense, the defendant's character and background as well as the protection of the public safety.

¶ 2 If the trial court's discretion is questioned, our Legislature may choose to move in the direction of other jurisdictions with similar repeat offender legislation, where the judiciary is prevented from exercising its discretionary powers and is required to impose a mandatory sentence of life imprisonment. See Cal.Penal Code § 667; see also Lisa E. Cowart, *Comment: Legislative Prerogative vs. Judicial Discretion: California's Three Strikes Law Takes A Hit*, 47 DePaul L.Rev. 615 (1998). Such an alternative would not benefit this Commonwealth and would send a message that our judiciary is not equipped to determine a sentence that would protect the public safety. I believe our judiciary has the experience, ability and common sense to determine each individual sentence on a case-by-case basis. Each day our trial courts mete out sentences with public safety in mind. A sentence imposed pursuant to § 9714(a)(2) should not be any different.

¶ 3 In the instant case, the Appellant is a dangerous and violent repeat sex offender who preys upon the frailties of defenseless elderly women. Under the facts and circumstances of this case, the trial court properly determined that a sentence of twenty-five (25) to fifty (50) years imprisonment was insufficient to protect the public safety.