J-S51005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ALTON M. PARKER | |
| Appellant | No. 2552 EDA 2013 |

Appeal from the Judgment of Sentence August 20, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008355-2011

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED SEPTEMBER 09, 2015**

Appellant, Alton M. Parker, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for aggravated assault, simple assault, possessing instruments of crime ("PIC"), recklessly endangering another person ("REAP"), criminal mischief, aggravated assault by vehicle while driving under the influence ("aggravated assault—DUI"), accidents involving death or personal injury, and DUI—controlled substances.[1]  We affirm.

The trial court opinion set forth the relevant facts of this case as follows:

---

[1] 18 Pa.C.S.A. §§ 2702, 2701, 907, 2705, 3304(a)(1); 75 Pa.C.S.A. §§ 3735.1, 3742, 3802(d)(1).

---

*Retired Senior Judge assigned to the Superior Court.

On May 7, 2011, at approximately 4:00 p.m.[,] the 2500 and 2600 blocks of Myrtlewood Street were blocked off for two neighborhood block parties. Moonbounces had been set up in the 2600 block, along with tables filled with food and cake. The streets were blocked off with a parked car and rope, and were packed with adults and at least fifty (50) children, many of whom were toddlers.

Appellant, who was driving a dark-colored car which he did not own and did not have permission to use, turned off Huntingdon Street and proceeded up Myrtlewood in the wrong direction. Although the street was blocked off with a vehicle barrier, Appellant drove through the barrier blocking the 2500 block, hitting tables and chairs as he drove by. Neighbors screamed, "You're going the wrong way, you're going the wrong way."

Appellant, driving at a rate of between twenty (20) and forty-five (45) mph, ignored them and threw a can of beer out of his car window, as he held a hatchet in his left hand. Neighbors attempted to herd the children out of the way, but it was too late. Appellant revved his car engine, speeding up and slammed into one of the moonbounces while two-year-old Carmel White was still inside. The force of the impact tore the moonbounce out of its plug, with wires flying.

As Appellant turned the corner, still dragging the moonbounce with Carmel White inside behind him, he hit the other moonbounce as well as hitting two children: Jahlil Clark and Andre Clark. As neighbors desperately searched for the children, they could not at first find Carmel. They had to cut the moonbounces open to free the children tangled within. Appellant was traveling at such a rate of speed that a cob of corn had wedged in his driver's side mirror, a plastic fork in the windshield, and food splattered all over the headlights, hood, and front bumper. He also dragged the tables the length of about ten houses as he sped by.

Although neighbors screamed at him that he had hit a child, Appellant did not slow down as he turned onto Oakdale Street, however he did slow down around the 2900 block of Lehigh Street and neighbors, including

Jerome Conquest…chased after him and eventually caught up with his car. Some of them attempted to pull open the driver's side door. Other people attempted to reach in through the window. Appellant, who had been attempting to fight the neighbors off, pulled the door shut and locked it. He then sped off and hit a blue car parked at the corner.

Valerie Walls called 911 while other neighbors ran to help Andre Clark, who lay bleeding in the street, his head swelling. He and the other children who had been hit by Appellant were taken by ambulance to St. Christopher's Hospital.

Off-duty Police Officer Jonathan Ross was driving on 29th Street near Huntingdon Street when he heard a crash and observed a crowd of people running to Myrtlewood Street. Officer Ross drove up a block and saw a dark colored car traveling eastbound with the crowd chasing it. [Mr.] Conquest ran toward Officer Ross'[] truck and told him, "Hey, listen, chase that car. He just ran over some kids." [Mr.] Conquest jumped into the back of Officer Ross' truck and they chased Appellant, now driving down Oakdale Street, for five or six blocks. They followed him to 26th Street and Sergeant Streets, where he stopped behind a white BMW vehicle. Officer Ross pulled alongside Appellant's car and tried to get him to stop, but Appellant hit the passenger side of Officer Ross' truck, clipped the BMW, and crashed into a wall at a speed of at least 30 mph.

[Mr.] Conquest jumped from the back of [Officer] Ross' truck, punched Appellant twice in the face, and tried to reach in to take the keys from the ignition, but Appellant continued to struggle and try to push [Mr.] Conquest's hands away. When [Mr.] Conquest would not be deterred, Appellant swung a hatchet at him, the blade sinking into the car door.

Officer Ross positioned his car behind Appellant's car, trapping him, and called 911. As Appellant attempted to put his car in reverse, Officer Ross jumped from the truck with his badge and gun drawn, and informed the crowd he was a police officer. Appellant, glassy-eyed and startled,

began swinging the hatchet through the open car window at Officer Ross. Officer Ross backed out of range of the weapon. Backup officers arrived and together, they attempted to get the attention of Appellant, who was still swinging the hatchet.

One of the responding officers, Michael O'Brien, noted a strong odor of PCP—a pungent, harsh, chemical scent as he opened Appellant's car door. Officer O'Brien attempted to take Appellant out of the driver's side door, but Appellant reached for the hatchet. After Officer O'Brien drew his gun, Appellant was distracted long enough that another officer was able to snatch the blade away. Once the weapon was secured, officers placed Appellant under arrest. Appellant was unable to walk under his own power and was completely incoherent. His eyes were bloodshot and his appearance generally was disheveled; his boots were mismatched. He smelled strongly of PCP.

Appellant was taken to St. Joseph's Hospital. At the hospital, Police Officer Karen Cotton read Appellant his *O'Connell*[2] warnings, informing him of the consequences of refusing a blood test, and observed Appellant's blood draw at 5:25 p.m. At the time, Appellant was aggressive and struggling while handcuffed to his bed. Appellant told Officer Cotton that he was in the area of Lehigh Street to drop off a TV to a customer when he blacked out.

After the accident Carmel White, a twenty-one (21) month old toddler, was admitted to St. Christopher's Hospital with difficulty walking. She had left leg pain, an abrasion to her right wrist, and blood in her diaper. Jahlil Clark, nine (9) years old, had a possible small fracture to his right patella, knee swelling, knee and leg sprain, and was admitted to St. Christopher's Hospital. Alexus Jardine, seventeen (17) years old, was admitted to St. Christopher's with wrist and hand sprains, and abrasions. She had been dragged by the moonbounce for a distance of four (4) houses.

---

[2] ***Com., Dept. of Transp., Bureau of Traffic Safety v. O'Connell***, 521 Pa. 242, 555 A.2d 873 (1989).

Andre Clark[,] nine (9) years old at the time of the accident, was admitted to the hospital with a right epidural hematoma, a liver laceration, a right shoulder fracture, broken fingers, fractured pelvis, a spine injury, and multiple broken ribs. He was referred for plastic surgery on his scalp, face, and knee. He could not bear weight on his legs initially and spent ten days in a rehab center. He was in St. Christopher's Hospital for a month before being moved to a rehabilitation center and wore a neck brace for three months. He underwent an extensive rehabilitation period: he could not walk for a month and remained in a wheelchair, then required crutches, and finally a walking stick. After his release, he limped for six months. Even today, [Mr.] Clark cannot run as fast as he used to.

Toxicology tests on the blood drawn from Appellant at the hospital showed that his blood contained forty-two (42) nanograms per millimeter of phencyclidine ("PCP"), a Schedule II controlled substance. Any amount of PCP in the blood causes effects; the minimal reportable levels for this drug are between one (1) and five (5) nanograms. PCP is a hallucinogen which causes a distortion of person, place, and time; judgment is affected and rapid muscle movement and belligerent behavior also result. The amount of PCP in Appellant's blood was consistent with recent, active use in a dosage consistent with and capable of producing adverse psychoactive effects.

(Trial Court Opinion, filed December 3, 2014, at 4-8) (footnotes and internal citations to the record omitted).

Following a bench trial, the court convicted Appellant of two (2) counts each of aggravated assault, simple assault, aggravated assault—DUI, and PIC; three (3) counts of accidents involving death or personal injury; one (1) count each of REAP and DUI—controlled substances; and four (4) counts of criminal mischief. On August 20, 2013, the court sentenced Appellant to consecutive terms of eleven (11) to twenty-two (22) years' incarceration for

aggravated assault; four (4) to eight (8) years' incarceration for aggravated assault—DUI; three (3) to six (6) years' incarceration for accidents involving death or personal injury; and one (1) to two (2) years' incarceration for one of the simple assault convictions. The court imposed concurrent terms of seventy-two (72) hours' to six (6) months' incarceration for DUI; thirty-two (32) to sixty-four (64) months' incarceration for PIC; fourteen (14) to twenty-eight (28) months' incarceration for REAP; four (4) to eight (8) months' incarceration for criminal mischief; and one (1) to two (2) years' incarceration for the remaining simple assault conviction. Thus, the court sentenced Appellant to an aggregate term of nineteen (19) to thirty-eight (38) years' imprisonment.[3]

Appellant filed a timely *pro se* notice of appeal on August 27, 2013. The trial court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied. On April 29, 2014, this Court dismissed the appeal for failure to file a brief. On May 29, 2014, Appellant filed an application to reinstate the appeal. This Court reinstated the appeal on July 9, 2014, and substitute counsel was appointed. This Court subsequently granted Appellant's application for remand to file a supplemental Rule 1925(b)

_____

[3] The court subsequently amended the sentence by merging the convictions for DUI and aggravated assault—DUI. Because the court had originally imposed the merged DUI sentence concurrently, the amendment made no change to Appellant's aggregate term of imprisonment.

statement. After the trial court granted Appellant an extension of time, Appellant filed a timely supplemental Rule 1925(b) statement.[4]

Appellant raises a single issue for our review:

> DID THE SENTENCING COURT ERR AS A MATTER OF LAW, ABUSE ITS DISCRETION, AND VIOLATE GENERAL SENTENCING PRINCIPLES WHEN IT SENTENCED [APPELLANT] TO 19-38 YEARS' INCARCERATION; WHERE THIS SENTENCE WAS MANIFESTLY EXCESSIVE AND UNREASONABLE; FAR SURPASSED WHAT WAS REQUIRED TO PROTECT THE PUBLIC, THE COMPLAINANTS, AND THE COMMUNITY; WENT WELL BEYOND WHAT IS NECESSARY TO FOSTER [APPELLANT'S] REHABILITATION; AND WAS GROSSLY DISPROPORTIONATE TO THE CRIMES?

(Appellant's Brief at 1).

In his sole issue, Appellant argues he is fifty-six years old and in poor health. Appellant contends the trial court effectively imposed a "life sentence" by making many of Appellant's sentences run consecutively. Appellant concedes the individual sentences fall within the standard range of the Sentencing Guidelines. Nevertheless, Appellant asserts his aggregate sentence is disproportionate to his crimes, considering that the victims all survived and made nearly complete recoveries from their injuries. Appellant concludes his sentence is manifestly excessive, and this Court should remand for resentencing. Appellant's challenge is to the discretionary aspects of his sentence. **See Commonwealth v. Gonzalez-Dejusus**, 994

_____

[4] On July 15, 2015, the Commonwealth filed its brief late, along with an unopposed motion to accept the brief as timely filed. We grant the open motion and accept the Commonwealth's brief as timely filed.

A.2d 595 (Pa.Super. 2010) (explaining challenge to imposition of consecutive sentences implicates discretionary aspects of sentencing); **Commonwealth v. Lee**, 876 A.2d 408 (Pa.Super. 2005) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. **Commonwealth v. Sierra**, 752 A.2d 910 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing. **Commonwealth v. Mann**, 820 A.2d 788 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).

When appealing the discretionary aspects of a sentence, an appellant must also invoke the appellate court's jurisdiction by including in his brief a

separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. **Commonwealth v. Mouzon**, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal 'furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases.'" **Commonwealth v. Phillips**, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009) (quoting **Commonwealth v. Williams**, 562 A.2d 1385, 1387 (Pa.Super. 1989) (*en banc*) (emphasis in original)). "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." **Commonwealth v. Anderson**, 830 A.2d 1013, 1018 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Sierra, supra** at 912-13 (quoting **Commonwealth v. Brown**, 741 A.2d 726, 735 (Pa.Super. 1999) (*en banc*), *appeal denied*, 567 Pa. 755, 790 A.2d 1013 (2001)).

"Generally, Pennsylvania law 'affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being

imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question.'" *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa.Super. 2011) (quoting *Commonwealth v. Pass*, 914 A.2d 442, 446-47 (Pa.Super. 2006)). *See also Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa.Super. 1995) (stating defendant is not entitled to "volume discount" for his crimes by having all sentences run concurrently). *But see Commonwealth v. Dodge*, 957 A.2d 1198 (Pa.Super. 2008), *appeal denied*, 602 Pa. 662, 980 A.2d 605 (2009) (holding consecutive, standard range sentences on thirty-seven counts of **petty theft offenses** for aggregate sentence of 58½ to 124 years' imprisonment constituted virtual life sentence and was so manifestly excessive as to raise substantial question). "Thus, in our view, the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." *Prisk, supra* at 533. *But see Commonwealth v. Austin*, 66 A.3d 798 (Pa.Super. 2013), *appeal denied*, 621 Pa. 692, 77 A.3d 1258 (holding that challenge to imposition of consecutive sentences, which yields extensive aggregate sentence, does not necessarily present substantial question as to discretionary aspects of sentencing, unless court's exercise of discretion led to sentence grossly incongruent with criminal conduct at issue and patently

unreasonable).

On appeal, this Court will not disturb the judgment of the sentencing court absent an abuse of discretion. ***Commonwealth v. Fullin***, 892 A.2d 843 (Pa.Super. 2006).

> [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Commonwealth v. Walls***, 592 Pa. 557, 564, 926 A.2d 957, 961 (2007) (internal quotation marks and citations omitted). "Where the sentencing court imposes a sentence within the guideline range, we must review to determine whether the trial court's sentence is 'clearly unreasonable.'" ***Dodge, supra*** at 1200 (citing 42 Pa.C.S.A. § 9781(c)(2)).

Instantly, Appellant failed to object to his sentence at imposition or to file a post-sentence motion. Therefore, Appellant waived his challenge to the discretionary aspects of his sentence. ***See Mann, supra***. Moreover, assuming without deciding Appellant's claim even raises a substantial question, the trial court explained its sentencing decision as follows:

> The evidence introduced at trial established that Appellant drove his car through a crowd of children, injuring several of them severely. Despite warning cries from assembled neighbors, Appellant drove through a blocked-off street

- 11 -

and into the crowd. When stopped by concerned citizens and an off-duty police officer, [Appellant] threatened them with a hatchet until physically restrained. The evidence further showed that Appellant had forty-two (42) nanograms of PCP in his bloodstream….

At trial, Appellant did not admit responsibility for his actions and instead testified that he had suffered mini-strokes in 2011 and heart attacks in 2009 and 2010 as a result of pulmonary artery narrowing, and that, on the day of the incident, he suffered another mini-stroke while driving. He testified he did not remember anything from the time he began driving until the time he woke up in the hospital. He testified that although he had taken PCP three (3) days prior to the incident, he had not taken PCP on the day of the incident. Appellant testified that although he had a drug problem "for years…no one tried to help [him]." However, the only evidence of his strokes in the medical records provided to the [c]ourt were self-reported by Appellant himself.

At sentencing, this [c]ourt heard evidence that Appellant had had a difficult childhood and suffered from years of drug addiction. Appellant had a prior record score of four (4) and two convictions for selling drugs, as well as arrests for violations of Protection from Abuse ("PFA") orders and for aggravated assault. He was first arrested at age fifteen (15) and at the time of trial, was fifty-six (56) years old. Appellant suffered from uncontrolled blood pressure, coronary and peripheral artery disease, chest pain, heart palpitations, hernias and foot ulcers. Appellant argued that his actions on that day were an aberration brought on by stroke symptoms, despite the fact that he had also ingested PCP and admitted to ingesting PCP.

However, this [c]ourt also heard testimony from Andre Clark's family regarding the effects the accident had on his life. He no longer enjoys going out and playing, and is mocked because he is slower physically than other children and "in other ways." The family noted that Appellant had not shown any remorse throughout the entire court case. This [c]ourt also heard Appellant's allocution, in which he stated that he was sorry, but also that he did not understand what PCP and pulmonary artery disease had

- 12 -

been doing to his body. However, despite his apologies, he still insisted that he had not used PCP on the day of the incident and that he had suffered a stroke while driving.

In fashioning Appellant's sentence, this [c]ourt considered all of the testimony and evidence offered, including the pre-sentence investigation report and mental health evaluation, and took note that neighbors yelled at Appellant to slow and stop, and he ignored these warnings; the injuries and lasting effects suffered by the four (4) child victims who had been hospitalized; Appellant swinging a hatchet at a police officer; and that the only reason Appellant stopped was because his car was forcibly rammed by Officer Ross. This [c]ourt found that Appellant's drug abuse had spiraled out of control to such a point that the community was not safe from him; Appellant's lengthy criminal record was concerning; and that Appellant[] needed rehabilitation, but such rehabilitation could not be effectuated outside of a prison.

Thus, Appellant's sentence of nineteen (19) to thirty-eight (38) [years' incarceration] was appropriate considering the gravity of his offense, his history of addiction and need for rehabilitation, and the need to protect the community, and this [c]ourt did not abuse its discretion.

(Trial Court Opinion, filed December 3, 2014, at 11-12). The record shows the court appropriately considered the relevant sentencing factors and thoroughly detailed its reasons for the sentence imposed, including the violent nature of the crimes against multiple victims and Appellant's history of criminal activity and drug abuse. Thus, even if Appellant had properly preserved his sentencing challenge and raised a substantial question, we would see no grounds to disturb Appellant's standard range sentences. *See* ***Walls, supra***; ***Dodge, supra***. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/9/2015