J-A31029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JASON J. DOMINICK | |
| Appellant | No. 60 MDA 2015 |

Appeal from the Judgment of Sentence August 1, 2014
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0002273-2013

BEFORE:  PANELLA, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 05, 2016**

Jason J. Dominick appeals from the judgment of sentence imposed by the Court of Common Pleas of Lackawanna County after a jury convicted him of third-degree murder[1] and conspiracy[2] to commit third-degree murder. After careful review, we affirm.

The underlying facts of this case are as follows.  On July 27, 2013, Scranton police officers discovered a Jeep Liberty at the bottom of a ravine near Roaring Brook Step Falls, approximately .72 miles east of the University of Scranton tennis courts.  Tire marks at the top of the embankment were

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502.

[2] 18 Pa.C.S. § 903.

consistent with high acceleration, indicating the Jeep had been forced over the embankment at a high rate of speed. A deceased male, later identified as Frank Bonacci, was found slumped over the center console with a single wound to the back of the head from a "wadcutter type bullet" from "a .38 special." N.T. Trial, 5/2/14, at 89-91. A large rock was wedged on the vehicle's gas pedal.

Subsequent investigation revealed that Dominick and Bonacci were rivals for the affections of Keri Tucker, with whom Dominick had a tempestuous relationship.

On July 19, 2013, beginning at 3:00 p.m., Dominick's best friend, Neil Pal, hosted a party at which Dominick drank alcohol and took the drug ecstasy. Bonacci arrived at the party at approximately 2:30 a.m. By 6:00 a.m. Dominick, Pal, Bonacci and Brandon Emily were on the rear deck of Pal's house. Emily was waiting for his roommate to pick him up, when Pal said that he and Dominick were going to take Bonacci home in Bonacci's Jeep. At 6:50 a.m., Emily saw Dominick, Bonacci and Pal leave the deck and walk toward the alley where the Jeep was parked.[3]

Emily heard the Jeep start and travel down the alley to Linden Street. At 6:51 a.m., a University of Scranton surveillance camera filmed Bonacci's

_____

[3] At trial, Dominick testified that all times relevant to this case, Pal was in the driver's seat of the Jeep, Bonacci was in the front passenger's seat and Dominick was in the rear passenger's seat behind Bonacci. **See** N.T. Trial, 5/6/14, at 245-46.

vehicle as it crossed nearby railroad tracks and approached the access road for Step Falls.

At 7:18 a.m., Pal called his friend Maribeth Cataldi, and asked her to pick him and Dominick up on the berm of Route 81 South in the vicinity of Step Falls.

Dominick and Pal were interviewed by police on July 23, 2013, and immediately afterward participated in searches for Bonacci that his family and friends organized.

Police later determined that the bullet that killed Bonacci was fired from a .38 owned by Pal. At trial, Dominick's fellow inmate at the Monroe County Prison testified that Dominick admitted shooting Bonacci with a gun that Pal provided to him, and confessed that he and Pal then "put a rock on the gas pedal and drove the car over a cliff." N.T. Trial, 5/2/14, at 169-71.

On March 10, 2014, a jury found Dominick not guilty of first-degree murder and conspiracy to commit first-degree murder. However, the jury convicted him of third-degree murder and conspiracy to commit third-degree murder.

On August 1, 2014, the trial court imposed two consecutive sentences of twenty to forty years' incarceration, for an aggregate sentence of forty to eighty years. Dominick filed post-sentence motions and a motion for reconsideration of sentence, both of which the court denied on December 5, 2014.

This timely appeal followed in which Dominick raises the following issues for our review.

1. Whether the trial court erred in failing to find that criminal conspiracy to commit third-degree murder is not a cognizable offense in the [Commonwealth] of Pennsylvania.

2. Whether the trial court erred in determining that the Commonwealth had not violated discovery rules and the holding of **Brady v. Maryland**, 373 U.S. 83 (1963), by delivering a supplemental gunshot residue report to the defense after trial and in neglecting to produce any report from a blood stain expert consulted by the Commonwealth.

3. Whether the verdict was against the sufficiency of the evidence.

4. Whether the verdict was against the weight of the evidence.

5. Whether the trial court abused its discretion by sentencing [Dominick] to the maximum penalty allowable by law.

Appellant's Brief, at 5.

Prior to trial, and subsequently in a post-sentence motion, Dominick asserted that conspiracy to commit third-degree murder is not a cognizable offense in Pennsylvania. He raises the issue again before this Court.

In **Commonwealth v. Fisher**, 80 A.3d 1186 (Pa. 2013), our Supreme rejected this position, noting:

> The absence of intent to kill does not preclude a defendant from being convicted of conspiracy to commit third degree murder. Absence of specific intent is not an element of third degree murder; the third degree murder statute does not list elements or specify a requisite mens rea, but rather categorizes this degree of homicide as "[a]ll other kinds of murder" not falling within the definition of first or second degree murder. 18 Pa.C.S. § 2502(c).

. . .

- 4 -

> If a defendant acts with his co-conspirators in brutally attacking the victim with the intention of killing him, he conspires to commit first degree murder; if the defendant performs the same action but does not care whether the victim dies or not, he conspires to commit third degree murder. In the latter example, the defendant did not . . . intend to aid an unintentional murder; rather, he intended to aid a malicious act resulting in a killing. Malice is not the absence of any intent, just the specific intent to kill. Where, as here, the defendant intends the underlying act . . . which results in death, the evidence supports the charge of conspiracy to commit third degree murder.

*Fisher*, *supra* at 1195.

In light of the dissenting opinion in *Fisher*, which concludes that conspiracy to commit third-degree murder is not a cognizable offense, and pre-*Fisher* decisions by this Court that reached the same conclusion, Dominick "asks this Court to re-examine this issue." Appellant's Brief, at 10. "It is beyond peradventure that the Superior Court must follow [the Supreme] Court's mandates, and it generally lacks authority to determine that [the Supreme] Court's decisions are no longer controlling." *Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 480 (Pa. 2011). Accordingly, we decline the opportunity to review the issue and determine that the trial court properly concluded that conspiracy to commit third-degree murder is a cognizable offense.

Dominick next argues that the trial court erred when it found that the Commonwealth did not violate the discovery rules and *Brady* with respect to the production of expert reports.

Pa.R.Crim.P. 573(B)(1)(e) provides, in relevant part, "[t]he Commonwealth shall disclose to the defendant's attorney . . . any results or

reports of scientific tests [or] expert opinions . . . that are within the possession or control of the attorney for the Commonwealth." "If, prior to or during trial, either party discovers additional evidence or material previously requested . . . such party shall promptly notify the opposing party of the court of the additional evidence, material or witness." Pa.R.Crim.P. 573(D).

On April 11, 2014, defense firearms safety and training expert, Emanuel Kapelsohn, Esquire, prepared a report in which he concluded, "it is my opinion that the fatal shot could possibly have been fired from either the driver's seat or the rear right-side passenger seat, but would more easily have been fired from the driver's seat." Kapelsohn Report, 4/11/14, at 6. Furthermore, the report discussed gunshot residue (GSR) testing, stating, "I would strenuously request that properly-directed GSR testing be performed by [an] independent forensic laboratory facility, such as RJ Lee Group in Monroeville, Pennsylvania, before this case proceeds to trial." *Id.* at 5.

Based on Kapelsohn's request, the Commonwealth arranged for the RJ Lee Group to perform several tests on the front passenger seat cover. The Commonwealth paid for the testing, and on April 22, 2014, the RJ Lee Group forwarded to the Commonwealth a report that stated, "it can be concluded that the reactions on the seat cover are consistent with reactions observed on a surface that was in the vicinity of a firearm discharge." RJ Lee Group Report, 4/22/14, at 5. As the trial court noted, the report "offered no opinions as to the directionality of the discharge or the location of the

shooter." Trial Court Memorandum, 12/5/14, at 20. The Commonwealth provided a copy of the report to the defense upon receipt.

Trial began on April 28, 2014. The Commonwealth rested its case on May 6, 2014. The defense opened its case-in-chief on May 6, 2014, and rested on May 7, 2014. "Immediately prior to Kapelsohn's testimony on May 7, 2014, Kapelsohn spoke with the RJ Lee Group scientists regarding their testing and conclusions. RJ Lee Group did not advise Kapelsohn of any anticipated revision to its report of April 22, 2014." *Id.* (citations omitted).

However, in a report dated May 7, 2014, but signed by the forensic experts on June 3 and 5, 2014, the RJ Lee Group revised its observation with respect to the positive reaction for nitrates on the back of the seat cover. The April 22, 2014 report states, "[t]he positive reaction observed on the back of the seat cover was located in the *upper right corner* (near the passenger window if looking at the back of the seat cover from the back of the car)." RJ Lee Group Report, 4/22/14, at 4 (emphasis added). In contrast, the revised report states, "[t]he positive reaction observed on the back of the seat cover was located in the *upper left corner* (closer to the middle edge of the seat if looking at the back of the seat cover from the back of the car)." RJ Lee Group Report, 5/7/14, at 4 (emphasis added).

The RJ Lee Group did not notify the Commonwealth that it was going to issue a revised report. The revised report was not delivered to the Commonwealth until June 10, 2014, which was thirty-one days after the jury reached its verdict. The Commonwealth provided the revised report to

Dominick on July 30, 2014, thus allowing Dominick to include it in his post-sentence motions.

We agree with the trial court that because the Commonwealth was unaware of the revised report until 31 days after the verdict, the Commonwealth could not have violated Rule 573(B) or 573(D). For the same reason, Dominick's assertion of a **Brady** violation must fail.

> In order to establish a **Brady** violation, a defendant must show that: (1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant.

**Commonwealth v. Willis**, 46 A.3d 648, 656 (Pa. 2012).

Because the Commonwealth did not have the revised report, it could not have suppressed it either willfully or inadvertently, and thus no **Brady** violation occurred.

Dominick next asserts that the Commonwealth violated the rules of criminal procedure and **Brady** by failing to provide an expert report or opinion from blood-stain analyst Paul Kish.

At trial, Detectives Joseph Castellano, Dennis Lukasewicz and Michael Fueshko testified that they provided police reports and investigative materials to Kish, whose office is in Corning, New York. However, Kish did not prepare a report or opinion. Rather, prior to trial, the Commonwealth decided to have Detective Fueshko, the lead crime scene investigator on the

case, and an expert in blood pattern and stain analysis, render an expert opinion.

Detectives Lukasewicz and Fueshko testified that law enforcement had no contact with Kish after delivering the materials to him. Furthermore, the investigators' interaction with Kish was documented in reports that the Commonwealth provided to Dominick.

Dominick argues that "it is simply unbelievable that several detectives would transport materials to an out of state expert, but not one of those detectives, or any member of the prosecution, had any sort of subsequent contact with that expert in any form." Appellant's Brief, at 21.

Ultimately, the trial court concluded, "Dominick has not demonstrated that the Commonwealth withheld any information that was provided by Mr. Kish, nor that any such blood stain evidence was favorable to the defense." Trial Court Memorandum, 12/5/14, at 25. Our review of the record indicates that the trial court did not err or abuse its discretion in reaching this conclusion. Accordingly, Dominick is not entitled to relief on his claim that the Commonwealth violated Pa.R.Crim.P. 573(B)(1)(e) or committed a *Brady* violation with respect to an expert opinion or report by Kish.

Dominick next claims that the Commonwealth presented insufficient evidence to support his convictions for third-degree murder and conspiracy.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test,

we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Best*, 120 A.3d 329, 341 (Pa. Super. 2014) (citations omitted).

With respect to the crime of third-degree murder, our Supreme Court has stated:

Section 2502 of the Crimes Code defines the three degrees of murder. This section sets forth the mens rea for first degree murder, see 18 Pa.C.S. § 2502(a) (an intentional killing), and defines second degree murder as that occurring during the perpetration of a felony. *See id.*, § 2502 (b). Regarding third degree murder, however, the statute simply states, "All other kinds of murder shall be murder of the third degree." *Id.*, § 2502 (c). Importantly, § 2502(c) does not set forth the requisite mens rea for third degree murder; however, § 302(c) of the Crimes Code provides, "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." *Id.*, § 302(c) (emphasis added).

Case law has further defined the elements of third degree murder, holding:

[T]o convict a defendant of the offense of third[ ]degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought.

- 10 -

> This Court has long held that malice comprehends not only a particular ill-will, but . . . [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.
>
> *Commonwealth v. Santos*, 876 A.2d 360, 363 (Pa. 2005) (alteration in original) (internal citation, quotation, and emphasis omitted); *see also Commonwealth v. Drum*, 58 Pa. 9, 15 (1868) (defining malice as quoted above).

*Fisher*, *supra* at 1191.

Dominick argues that the evidence at trial was insufficient to establish that he shot and killed Bonacci. He notes that his expert, Kapelsohn, concluded "the fatal shot could possibly have been fired from either the driver's seat or the rear right-side passenger's seat, but would more easily have been fired from the driver's seat. This is especially so given that Dominick is right-hand dominant, and is reportedly not an experienced or trained shooter." Kapelsohn Report, 4/11/14, at 6. Based on Kapelsohn's conclusion, Dominick suggests "the more likely scenario is that [Pal] shot the victim." Appellant's Brief, at 25.

However, at trial, Detective Fueshko testified that the shot had to have been fired from the back seat of the vehicle based on several factors, including the void pattern in the blood on the center console and the passenger seat. N.T. Trial, 5/5/14, 202-03. Dr. Wayne Ross, an expert in biomechanics, kinematics, blood stain analysis and forensic pathology also testified for the Commonwealth. He concluded that based on the blood stains, Bonacci was seated in the passenger seat, facing forward, with his

arm resting on the center console when he was shot. *Id.* at 243-67. He also testified that the shot had to have been fired by the back seat passenger. *Id.* at 257. Dominick admitted that he was the back seat passenger. N.T. Trial, 5/6/14, at 246.

The Commonwealth also presented evidence regarding Dominick's hatred of Bonacci, who dated Keri Tucker while she and Dominick were not together. The evidence included a text message from Dominick to Pal sent two months before the murder, stating, "just so you know Neil, I'm cool with your boy Frank [Bonacci], but if he ever gets cocky around me I'll just snuff him." N.T. Trial, 5/1/14, at 262.

The jury also heard testimony that Bonacci and Dominick had a verbal altercation over Tucker at a sports bar during the early morning hours of June 8, 2013, less than six weeks before the murder. *Id.* at 263. At that time, Dominick unsuccessfully attempted to fight Bonacci by trying to convince him to meet at Step Falls, an area close to where Bonacci's body was found. *Id.* at 263-66.

Anthony Rusielewicz, who was an inmate at the Monroe County Correctional Facility with Dominick, testified that Dominick confided details about the murder to him. Dominick told him that he shot the victim with a gun that "the Indian kid" (Pal) provided to him. After the killing, they put a rock on the gas pedal and drove the Jeep over a cliff. N.T. Trial, 5/2/14, at 163-71.

Viewed in the light most favorable to the Commonwealth as verdict winner, **see Best**, **supra**, the trial court properly concluded that the Commonwealth established that Dominick killed Bonacci and did so with malice. **See Fisher**, **supra**.

Dominick also challenges the sufficiency of the evidence to support his conviction for conspiracy to commit third-degree murder. A person is guilty of conspiracy to commit a crime if, with the intent of promoting or facilitating its commission, he agrees with another person that they will engage in conduct that constitutes such crime. 18 Pa.C.S. § 903(a)(1).

Dominick's sole argument is that the Commonwealth did not establish beyond a reasonable doubt that he shot and killed Bonacci. Because the Commonwealth failed to establish the existence of an underlying crime, he reasons there could be no conspiracy. However, we have determined that the trial court properly held that his conviction for third-degree murder is supported by the record. As the trial court noted, "the evidence presented at trial sufficiently demonstrated that Dominick agreed with Pal to kill Bonacci, while acting with a shared criminal intent, and committed an overt act in furtherance of that crime by shooting Bonacci." Trial Court Memorandum, 12/5/14, at 41. Accordingly, no relief is due on this claim.

Dominick next asserts that the verdict was against the weight of the evidence.

In **Commonwealth v. Clay**, 64 A.3d 1049 (Pa. 2013), our Supreme set forth the following standard of review for such claims:

The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

. . .

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

. . .

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 1054-55 (citations and quotations omitted).

Our review of the record leads us to conclude that the trial court did not abuse its discretion when it determined that "[t]he evidence of Dominick's guilt was not so attenuated and ambiguous that the jury verdict shocked the conscience of the court." Trial Court Memorandum, 12/5/14, at 43.

- 14 -

As noted by the trial court:

[T]he direct and circumstantial evidence established that Dominick shot and killed Bonacci with malice and conspired with Pal to commit that criminal act. Based upon the evidence of Dominick's drugged and intoxicated condition and fragile emotional state, there was an evidentiary basis for the jury to conclude that Dominick was incapable of forming the specific intent to kill, and to find him not guilty of first-degree murder but guilty of third degree murder and conspiracy to commit that offense.

*Id.*

The trial court thoroughly reviewed the testimony of the lay and expert witnesses, and concluded that Dominick's version of the shooting was not "so clearly of greater weight," *see Clay*, *supra*, than was the proof of his guilt. As the trial court did not abuse its discretion in reaching this conclusion, Dominick is not entitled to relief.

Dominick's final claim is that the trial court's imposition of sentences totaling forty to eighty years' incarceration was manifestly unreasonable, and therefore an abuse of discretion. As such, he challenges a discretionary aspect of his sentence.

To reach the merits of a discretionary sentencing issue, an appellate court must conduct a four-part analysis to determine:

(1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015) (en banc) (quoting *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011)).

Here, Dominick filed a timely notice of appeal and preserved the sentencing issue in his motion for reconsideration. In his brief to this Court, he included a statement of reasons relied upon regarding the discretionary aspect of sentence, as required by Pa.R.A.P. 2119(f).

A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision in the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Brown*, 741 A.2d 726, 735 (Pa. Super. 1999) (en banc).

"When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002) (citations omitted).

Dominick argues that the imposition of consecutive sentences is excessive, especially in light of the fact that the sentences for each offense were the maximum allowable by law. He further asserts that the trial court acted unreasonably by failing to consider the following factors:

- 16 -

[Dominick] had a prior record score of zero at the time of sentencing, is a very young man with a strong family support system, was under the influence of alcohol and mind altering substances at the time of the incident, was experiencing a mental health breakdown at the time of the incident and demonstrated appropriate remorse and acceptance of responsibility at the time of sentencing. Evidence of his remorse and character was presented through trial counsel, family members who spoke on his behalf, and through [Dominick] himself, who addressed the court."

Appellants' Brief, at 30-31.

In reviewing the factors considered when determining sentence, the court stated that the victim was essentially defenseless at the time of the murder, having been taken to a strange place while intoxicated. N.T. Sentencing Hearing, 8/1/14, at 47. The court noted that immediately after the murder, Dominick exhibited seemingly normal behavior, appearing calm, joking, going out to breakfast with friends, and later in the day sending playful text messages to Tucker. *Id.* at 47-50. The court found that such actions were not those of "someone who is racked with guilt or filled with remorse." *Id.* at 50. Lack of remorse has long been a legitimate sentencing factor in Pennsylvania. *Commonwealth v. Ellis*, 700 A.2d 948, 959 (Pa. Super. 1997).

The trial court also properly weighed Dominick's criminal background as a sentencing factor. In 2012, he was charged with theft by unlawful taking of movable property. He pled guilty and was on probation at the time of the murder. As probation was not a deterrent in the past, the court had a proper basis for concluding that a lesser sentence would not be effective.

A sentencing court "generally has discretion to impose multiple sentences concurrently or consecutively, and a challenge to the exercise of that discretion does not ordinarily raise a substantial question." *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014). "The imposition of consecutive, rather than concurrent sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of the punishment." *Commonwealth v. Lamonda*, 52 A.3d 365, 372 (Pa. Super. 2012).

In support of the imposition of consecutive sentences, the trial court noted the following factors: the nature of the crimes; Dominick's character and background; and the fact that the sentence was within the standard range of the guidelines. Trial Court Memorandum, 12/5/14, at 48.

Because Dominick has failed to raise a substantial question with regard to the discretionary aspect of his sentence, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/5/2016