J-S01001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGE RENARD SMITH, JR. | : | |
| | : | |
| Appellant | : | No. 404 MDA 2020 |

Appeal from the Judgment of Sentence Entered September 26, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0000633-2019

BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:              **FILED FEBRUARY 12, 2021**

George Renard Smith, Jr., appeals from the judgment of sentence, entered in the Court of Common Pleas of Lancaster County, following his convictions by a jury of delivery of methamphetamine[1] and criminal use of a communication facility.[2]  After careful review, we affirm.

On July 26, 2018, Lancaster County police officers assigned to the Selective Enforcement Unit (SEU) conducted a pre-planned "buy-walk detail," targeting Smith.  At trial, Officer Adam Flurry explained that a buy-walk detail is a police operation that consists of undercover police officers purchasing, via controlled means, as many drugs as possible over a four-hour span with the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] 18 Pa.C.S.A. § 7512(a).

aid of a confidential informant (CI). On that date, Officer Flurry met with the pre-designated CI and conducted a search as part of standard police protocol to ensure no additional drugs or money on the CI's person would taint the reliability of the buy-walk detail. The CI, in Officer Flurry's presence, then contacted Smith via cell phone to purchase methamphetamine, joined Smith in a parked vehicle near Smith's residence for a few moments, exited the vehicle, and returned to Officer Flurry, who observed the entire interaction. Upon the CI's return to Officer Flurry's vehicle, police recovered 1.09 grams of methamphetamine from the CI's person. Smith then exited his parked vehicle and proceeded to his residence. Video footage captured by Lancaster Safety Coalition surveillance cameras corroborated Smith's and the CI's movements on that date. In addition to Officer Flurry, other SEU officers surveilled the interaction between Smith and the CI.

In accordance with SEU protocol, police arrested Smith at a later date, on August 2, 2018, to protect the CI's and SEU officers' identities. *See* N.T. Jury Trial, 7/31/19, at 88-89, 99-100, 171. A jury trial before the Honorable Margaret C. Miller commenced on July 31, 2019, and concluded the following day when the jury returned guilty verdicts on both of the above-cited offenses. The court sentenced Smith on September 26, 2019, to 2½ to 5 years' incarceration for the delivery of methamphetamine, and a concurrent sentence of 1½ to 5 years' incarceration for the criminal use of a communication facility.

On October 4, 2019, Smith filed a timely post-sentence motion, which the court denied by order with an accompanying opinion on January 31, 2020. Smith filed a timely notice of appeal on February 28, 2020. The court never directed Smith to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b); instead, on March 2, 2020, the court issued an order affirming its denial of Smith's post-sentence motion and directing the clerk of courts to transmit the record to this Court.[3]

On appeal, Smith presents the following issues for our review:

1. Did the trial court err in admitting Officer Flurry's testimony that [the CI] told him [the CI was] going to buy drugs from a person [the CI] knew as Gee Smith[,] where this testimony was hearsay and not offered for merely showing course of conduct?

2. Did the trial court err in denying [] Smith's motion for a mistrial where the prosecuting officer, Detective [Nathan] Nickel, repeatedly referred to [] Smith as the "drug dealer" during his testimony?

---

[3] We have previously noted that:

The Rules of Appellate Procedure make the filing of a [Rule] 1925(a) opinion mandatory and this opinion must set forth the reasons for the rulings of the trial judge or must specify in writing the place in the record where the reasons may be found. The purpose of this rule is to provide the appellate court with a statement of reasons for the order so entered in order to permit effective and meaningful review of the lower court decisions. However, the lack of a Rule 1925(a) opinion is not always fatal to our review, because we can look to the record to ascertain the reasons for the order.

***Commonwealth v. Hood***, 872 A.2d 175, 178 (Pa. Super. 2005) (internal citations omitted).

3. Did the trial court abuse its discretion by imposing a minimum sentence of two[-]and[-]one[-]half years['] incarceration, a sentence near the top of the aggravated range of the sentencing guidelines, without a legitimate basis?

Appellant's Brief, at 9.

Smith first challenges the court's admission of Officer Flurry's testimony. *See* Appellant's Brief, at 19-22. Specifically, Smith objects to Officer Flurry's statements that "the informant told me that they were going to buy drugs from a person that they knew as Gee, G-e-e," and "the informant [said] they buy from a person they knew as Gee Smith, G-e-e, Smith." *Id.* at 20-21 (brackets omitted). The court admitted Officer Flurry's testimony as non-hearsay course of conduct evidence, rather than finding it to be inadmissible hearsay that improperly identified Smith. *See* N.T. Jury Trial, 7/31/19, at 111-13. We agree that the testimony was properly admitted as a course of conduct.

The admissibility of evidence is within the sound discretion of the trial court and an appellate court will not disturb an evidentiary ruling absent an abuse of that discretion. *Commonwealth v. Hicks*, 156 A.3d 1114, 1125 (Pa. 2017). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012). Additionally, regarding the admissibility of hearsay evidence, its purpose determines its admissibility. *Commonwealth v. Carson*, 913 A.2d 220, 258 (Pa. 2006).

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ***Commonwealth v. Dent***, 837 A.2d 571, 577 (Pa. Super. 2003); Pa.R.E. 801(c). Generally, hearsay is inadmissible because it "lacks guarantees of trustworthiness fundamental to [our] system of jurisprudence." ***Commonwealth v. Smith***, 681 A.2d 1288, 1290 (Pa. 1996). In order to guarantee trustworthiness, the proponent of a hearsay statement must establish an exception to the rule against hearsay. ***Id.*** However, "[w]hen a hearsay statement is offered for a purpose other than proving the truth of its contents, it is not hearsay and is not excludable under the hearsay rule." ***Commonwealth v. Hood***, 872 A.2d 175, 181 (Pa. Super. 2005) (internal citations omitted). "An out-of-court statement offered to explain a course of conduct is not hearsay." ***Dent***, ***supra*** at 577 (quoting ***Commonwealth v. Cruz***, 414 A.2d 1032, 1035 (Pa. 1980)).

At trial, Officer Flurry testified as follows:

Q: [T]ell us what occurred with the [CI] on July 26th for this case.

A: The [CI] was searched. We didn't find any drugs, weapons. I don't recall if they had money. If so, we'd hold it, but definitely no drugs and definitely no weapons. The [CI] sat down with me in the car. I say, who are we going to buy from today? That informant told me that—

[Defense Attorney]: I[] object[.] It's hearsay.

Court: [What is the Commonwealth's response]?

[Commonwealth Attorney]: **[T]he CI's testimony wouldn't be offered for the truth of the matter asserted. It's course of conduct.**

- 5 -

Court: I'll allow it. Overruled.

[Officer Flurry]: The [CI] told me that they were going to buy drugs from a person that they knew as Gee, G-e-e.

[Defense Attorney]: I[] object[.] This is identification. This is not course of conduct[.]

[Commonwealth Attorney]: [I]t's course of conduct. **We're not trying to prove that, at this point, that the person the [CI] is relaying information about is indeed that person.**

Court: I think it is still fairly within the scope of course of conduct. Overruled.

[Officer Flurry]: **The informant [said] they buy from a person they knew as Gee Smith, G-e-e, Smith. They knew that— they called that person based on a social media profile.** That informant showed me the social media profile that they were referring to on their phone to show me what it looked like. Then that informant placed a phone call to Gee Smith and arranged—

[Defense Counsel]: I[] object[.] I still believe it's hearsay[.]

Court: **[T]o say that the [CI] placed a phone call is not a statement by the [CI], it's an action observed by the officer, so I don't believe that would fall under hearsay anyway.** But I do believe that this is all properly course of conduct testimony, so I will allow it. Overruled.

N.T. Jury Trial, 7/31/19, at 111-13 (emphasis added).

Here, the Commonwealth clarified to the court that it was "not trying to prove that[] the person the [CI] is relaying information about is [Smith]," *id.* at 112, but establishing the CI's and SEU officers' course of conduct during the buy-walk detail. *Id.* at 111-13. Indeed, the Commonwealth specifically proved Smith's identity through Officer Flurry's later testimony. *See* N.T. Jury Trial, 7/31/19, at 125-26 (Officer Flurry explained how he used Facebook profile CI identified to retrieve birthdate, used one database to match last

- 6 -

name "Smith" from Facebook profile to same birthdate, used second database to match Smith's name and birthdate with photos on Facebook profile, used third database to match Smith's email to Facebook profile, and discovered Smith's name associated with 628 North Market Street address).

At the time of Smith's objection to Officer Flurry's testimony, the Commonwealth clarified to the court that its purpose in introducing the evidence was not to prove Smith was the person who delivered methamphetamine to the CI; instead, it was offered to prove that the CI identified a potential methamphetamine dealer through a Facebook profile, contacted that dealer using a cell phone, and then met with him in his parked car. *See Carson*, *supra*; N.T. Jury Trial, 7/31/19, at 111-13. We agree that this evidence was admissible to explain Officer Smith's and the CI's course of conduct during the described buy-walk detail. *See Dent*, *supra*; *Hood*, *supra*. Therefore, we discern no abuse of discretion in the court's admission of Officer Flurry's testimony. *See Hicks*, *supra*. *See also Commonwealth v. Estepp*, 17 A.3d 939, 945 (Pa. Super. 2011) (no abuse of discretion where court admitted police testimony explaining course of conduct, where CI informed police that 50-year-old white male named "Vern" sold prescription drugs from his residence at 2828 Agate Street); *Commonwealth v. Dargan*, 897 A.2d 496, 498-99 (Pa. Super. 2006) (no abuse of discretion where court admitted testimony explaining course of conduct where CI informed police that heroin could be purchased from bald, 5'5", 130 lb., African-American male named "Oc," residing in Old Forge near the intersection

of Main Street and Dunn Avenue, who operated brown Chevrolet Corsica with temporary registration notice in window, and license plate identification number FTD 3761).

Smith's second issue on appeal challenges the trial court's ruling that he was not entitled to a mistrial after Detective Nickel referred to Smith in his testimony, in various ways, as a "drug dealer." **See** Appellant's Brief, at 22-27. Specifically, Smith complains of Detective Nickel's following statements: (1) "So we maintained the camera positioned on the dealer's car"; (2) "[Detective Robert Whiteford] was requested to do a drive-by of the drug dealer whenever he exited his car"; and (3) "I had given the contact colors for the other officers working in the surveillance detail, the description of the dealer, and also the description of the house which I watched the dealer walk into, which was later determined to be 628 North Market Street." **Id.** at 24-25; **see also** N.T. Jury Trial, 7/31/19, 153-56.

We find this issue waived.[4] Here, Smith's counsel did not move for a mistrial until **the day after** Detective Nickel testified. **See** N.T. Jury Trial,

_____

[4] Even if not waived, we would find the properly admitted and uncontradicted independent evidence of Smith's guilt was so overwhelming, and the prejudicial effect of the ostensibly erroneous admission of Detective Nickel's limited references to Smith as a "drug-dealer" were so insignificant by comparison, that any error could not have contributed to the verdict. **See Commonwealth v. Green**, 162 A.3d 509, 519 (Pa. Super. 2017) (en banc) ("Not all errors at trial . . . entitle an appellant to a new trial[;] harmless error . . . reflects the reality that the accused is entitled to a fair trial, not a perfect trial[, and] . . . advance[s] judicial economy by obviating the necessity for a retrial where the . . . error was harmless beyond a reasonable doubt. An error

8/1/19, at 193 ("I would like to make a motion for a mistrial, and I'm making that motion due to the fact that **several times yesterday**[,] during the testimony of Detective Nickel[,] he repeatedly referred to Mr. Smith as the drug dealer, and I believe that is improper.") (emphasis added). Consequently, this issue is not preserved for our review.[5] **See** Pa.R.A.P. 302;

_____

will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict.") (citations and quotation marks omitted).

Here, we are persuaded beyond a reasonable doubt of Smith's guilt where the Commonwealth's evidence included: multiple SEU officers' testimony regarding their own direct observations at the time of the "buy-walk detail"; corroborating video footage captured by Lancaster Safety Coalition surveillance cameras; identity evidence consisting of Officer Flurry's testimony regarding his database research methods as well as address and identity information located within Smith's state-issued identification cards; and, that Smith was the only person to come into contact with the CI after the initial search of the CI's person, and prior to the recovery of methamphetamine. **See Commonwealth v. Hamlett**, 234 A.3d 486, 488-89 (Pa. 2020) (citing **Commonwealth v. Hicks**, 156 A.3d 1114 , 1140 (Pa. 2017) (Baer, J, concurring)) ("[W]e may affirm a judgment based on harmless error even if not raised by the Commonwealth because an appellate court has the ability to affirm a valid judgment or verdict for any reason appearing as of record. Thus[,] while ordinarily[] the Commonwealth has the burden of persuasion when it asserts that a particular error was harmless, _sua sponte_ invocation of the harmless error doctrine is not inappropriate as it does nothing more than affirm a valid judgment of sentence on an alternative basis.") (quotation marks and original emphasis omitted).

[5] Smith also argues that the trial "[c]ourt did not give a curative instruction" which "could have potentially cured this defect[.]" Appellant's Brief, at 27. Nevertheless, Smith's failure to request such an instruction results in waiver of his claim. **See Commonwealth v. Schoff**, 911 A.2d 147, 158 (Pa. Super. 2006) ("[A] defendant must make a timely and specific objection at trial or face waiver of h[is] issue on appeal. Failure to request a cautionary instruction upon introduction of evidence constitutes a waiver of a claim of trial court error in failing to issue a cautionary instruction.").

Pa.R.Crim.P. 605(B); ***see also Commonwealth v. Szakal***, 50 A.3d 210, 219 (Pa. Super. 2012) ("[A] motion for mistrial shall be made at the time the event prejudicial to the defendant occurs[.]"); ***see also Commonwealth v. Randolph***, 421 A.2d 469, 471 (Pa. Super. 1980) (["T]he record reveals that, at the time the prejudicial event complained of occurred, **defense counsel did not move for a mistrial**[; but waited] **until one day later**. Clearly, making the motion at that time was **untimely**, and, therefore, [Appellant] is precluded from raising the issue now.") (emphasis added).

Finally, Smith challenges the discretionary aspects of his sentence. ***See*** Appellant's Brief, at 27-33. We note that the right to challenge the discretionary aspects of one's sentence is not absolute; the jurisdiction of this Court must be properly invoked, which we evaluate via the following four-part test:

> (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, ***see*** Pa.R.A.P. 2119(f); and (4) whether there is a question that the sentence appealed from is not appropriate under the Sentencing Code. The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis. Generally, however, in order to establish a substantial question, the appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process.

***Commonwealth v. Dunphy***, 20 A.3d 1215, 1220-21 (Pa. Super. 2011) (some internal citations, quotations marks, and footnotes omitted).

Here, Smith filed a post-sentence motion for reconsideration of his sentence, followed by a timely notice of appeal. He has also included in his brief a Rule 2119(f) statement. **See** Appellant's Brief, at 15-18. Therefore, we must determine whether Smith raises a substantial question. **See Dunphy**, **supra**.

We determine whether the appellant has raised a substantial question on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007). "We cannot look beyond the statement of questions presented and the prefatory Rule 2119(f) statement to determine whether a substantial question exists." **Commonwealth v. Radecki**, 180 A.3d 441, 468 (Pa. Super. 2018) (brackets omitted).

In his Rule 2119(f) statement, Smith states that the court: (1) "imposed a sentence near the top of the aggravated range of the guidelines without stating sufficient or appropriate reasons for doing so"; (2) "stated, as its reason for an aggravated[-]range sentence, that this was not [] Smith's 'first rodeo,' and [']this is a third [felony Controlled Substances Act] violation[, which] is grounds for an aggravated sentence.' [Smith's previous felony drug convictions were] already incorporated into the sentencing guidelines"; and (3) "focused solely on the seriousness of the offense." Appellant's Brief, at 16-17.

We note that a claim that the court imposed an aggravated-range sentence without placing adequate reasons on the record raises a substantial question for our review. **See Commonwealth v. Bromley**, 862 A.2d 598,

- 11 -

604 (Pa. Super. 2004) (citing **Commonwealth v. Brown**, 741 A.2d 726, 735 (Pa. Super. 1999)). Additionally, a claim that the court considered impermissible factors as the sole reason to justify an aggravated-range sentence raises a substantial question. **See Commonwealth v. Simpson**, 829 A.2d 334, 338 (Pa. Super. 2003) (citing **Commonwealth v. McNabb**, 819 A.2d 54, 56 (Pa. Super. 2003)). Lastly, a claim that the trial court focused exclusively on the seriousness of the offense raises a substantial question. **See Commonwealth v. Bricker**, 41 A.3d 872, 875 (Pa. Super. 2012) (citing **Commonwealth v. Macias**, 968 A.2d 773, 776 (Pa. Super. 2009)). Thus, we will address the merits of Smith's discretionary aspects of sentencing challenge.

Our standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Blount**, 207 A.3d 925, 934-35 (Pa. Super. 2017) (quoting **Commonwealth v. Zirkle**, 107 A.3d 127, 132 (Pa. Super. 2014)). Moreover, this Court's review of the discretionary aspects of a sentence is governed by 42 Pa.C.S.A. §§ 9781(c) and (d). **Commonwealth v. Dodge**, 77 A.3d 1263, 1274 (Pa. Super. 2013). Section 9781(c) provides, in relevant part:

(c) Determination on appeal.—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

\* \* \*

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S.A. § 9781(c)(3). Subsection 9781(d) requires that, in reviewing the record, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

"Although a sentencing judge must state his or her reasons for the sentence imposed, a discourse on the court's sentencing philosophy is not required[; however, t]he court must explain any deviation from the sentencing guidelines." **Simpson**, **supra** at 338 (citing **Commonwealth v. Hill**, 629 A.2d 949, 953 (Pa. Super. 1993)) (internal citations, quotation marks, and ellipsis omitted). Additionally, "[w]here the court's sentencing colloquy shows consideration of the defendant's circumstances, prior criminal record, personal characteristics and rehabilitative potential, and the record indicates that the court had the benefit of the pre[-]sentence report, an adequate statement of

- 13 -

the reasons for sentence imposed has been given." ***Brown***, ***supra*** at 735-36 (citations and quotation marks omitted). ***See also Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988) ("Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself.").

Here, Smith claims that the trial court abused its discretion because it "relied solely" on Smith's prior record of drug dealing to support imposition of a sentence in the aggravated range. Appellant's Brief, at 30-31. Moreover, Smith argues that the court merely "paid lip service to having read the [pre-sentence investigative report and] gave no real consideration to any mitigating factors such as the abuse [Smith] sustained as a child, [Smith's needs in] fulfilling his current family obligations, [his] doing positive things for other people[,] and the large gap in time between offenses." ***Id.*** at 32-33. We disagree.

At sentencing, the court stated to Smith that he:

comes to court with a prior record that [he] earned or garnered. And one of the things that stands out[,] among others[,] is that this is your third offense for delivery of a controlled substance or possession with intent to deliver controlled substance. This is not your first rodeo[,] and you know that it's illegal[,] and you have been incarcerated for it before this time.

So I believe that the plea on your behalf for one more chance comes late. You have had chances since you were an adult, since 2003, and that doesn't even speak to what you went through in

the juvenile system in terms of opportunities for change or rehabilitation.

I also note that your prior record includes a number of probation and parole violations. That is also a sign to me that you are not focusing on the rehabilitative nature of supervision but, instead, you commit these crimes, you get your sentence, and you do what you want.

Your prior record score, as I said, is what it is. I do think that because this is a third offense, while the other two offenses are reflected in the prior record score, **the fact that this is a third offense[,] directly for a violation of the Controlled Substance Act[,] at the felony level**[,] is grounds for an aggravated sentence.

I think that **you have been given opportunities on similar charges and haven't taken them**. So I am satisfied that a sentence in the aggravated range is appropriate[ and] is supported by the facts and circumstances of the prior record[,] **notwithstanding the difficulties of your background[. A]ll of the letters that were written indicate that you are capable of great things, very good things within your family and with other people**. You just choose not to conform your habits, whether it comes to the criminal justice system or safety of the community[,] to the norms and laws of the community. **So[,] to the extent that you have had a troubled background, I am not unsympathetic, but do not find it to be a mitigating factor[,] where you are able in other areas of your life to demonstrate a willingness to conform behavior in the sense of family obligations and doing things for other people that are positive**. But that doesn't excuse[,] nor does it mitigate[,] the fact that you have been down this path before with selling drugs, and this is the third time. The gap in time doesn't really say much to me. I'm not going to speculate if you were simply out there operating uncaught or finding alternative things to do because it doesn't really matter. You were convicted of this offense before and you know it was wrong.

The jury was satisfied by the evidence and so am I that you had, in fact, committed these crimes. I respect that jury's verdict. I was there and **heard the evidence** and believe that, as I said, an aggravated[-]range sentence is warranted.

N.T. Sentencing Hearing, 9/26/19, at 9-11 (emphasis added).

Here, contrary to Smith's claims, the court did not rely solely on Smith's prior record or exclusively on the seriousness of the offense in imposing an aggravated-range sentence. Indeed, the court clearly explained its deviation from the sentencing guidelines, **see Simpson**, **supra**, by noting the repetitive nature of Smith's felony convictions, Smith's disinterest in rehabilitation, Smith's lack of willingness to conform his behavior to societal expectations within varying circumstances, and the nature of the evidence presented at trial. **See** N.T. Sentencing Hearing, 9/26/19, at 9-11.

In addition, at sentencing, the court indicated that it had the benefit of reading Smith's pre-sentence report. **See** N.T. Sentencing, 9/26/19, at 5 ("In reviewing the document, there was a lot about Mr. Smith that I wasn't aware of prior to trial[.]"). Therefore, we assume that the court properly weighed Smith's mitigating factors. **See Devers**, **supra**. Indeed, the court's sentencing colloquy demonstrated due consideration of Smith's circumstances, prior criminal record, personal characteristics, and rehabilitative potential. **See Brown**, **supra** at 735-36. We find that Smith's claim that the court gave no real consideration to his mitigating factors is actually a request for this Court to re-weigh the sentencing factors, which we may not do. **See Bricker**, **supra** at 876 ("The weighing of factors under 42 Pa.C.S.[A.] § 9721(b) is exclusively for the sentencing court, and an appellate court could not substitute its own weighing of those factors.") (ellipsis and brackets omitted). Consequently, Smith has not shown that his sentence is unreasonable; thus, his discretionary aspects of sentencing claim fails. **See**

42 Pa.C.S.A. § 9781(c)(3). We discern no abuse of discretion in the trial court's sentence. **See Blount**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/2021